T.C. Summary Opinion 2008-14


UNITED STATES TAX COURT


CIMBERLY CATHERINE CLARKE-LEWIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18446-05S.          Filed February 11, 2008.


Cimberly Catherine Clarke-Lewis, pro se.

<u>Chong S. Hong</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from a request for relief from joint and several liability under section 6015(f) with respect to petitioner's unpaid joint tax liabilities for 1999 and 2000. No notices of deficiency were issued. Petitioner requested relief by filing Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief). The issues for decision are whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f) for each year.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition was filed, petitioner resided in California.

Petitioner is a high school graduate who has worked in real estate and as a "personal banker" for Bank of America. Petitioner married Masafumi Nakasu in 1991. They started having marital problems in 1998 after the birth of their second child. Petitioner and Mr. Nakasu also started having financial troubles; they filed for bankruptcy and received a discharge in April 1998.

Petitioner and Mr. Nakasu filed joint Forms 1040, U.S. Individual Income Tax Return, for 1999 and 2000. The 1999

Federal income tax return showed $9,021 as the "Amount You Owe", line 69, but there was no remittance of the tax. The 2000 Federal income tax return showed $15,130 as the "Amount You Owe", line 69, but there was no remittance of the tax. Petitioner and Mr. Nakasu subsequently entered into an installment agreement with the Internal Revenue Service (IRS) in September 2001 with respect to their Federal income tax liabilities, and some payments were made thereunder.

In November 2001, petitioner separated from Mr. Nakasu. Petitioner and Mr. Nakasu sold the marital home; the sale closed on February 22, 2002. The "Sellers Closing Statement" contains petitioner's handwritten directive to make the proceeds payable to Mr. Nakasu. Mr. Nakasu did not use the proceeds to pay their Federal tax liabilities.

Mr. Nakasu filed for divorce in March 2002; the divorce became final that year. He filed an offer-in-compromise (OIC) in April 2002, which was rejected in July 2002. In the interim, petitioner and Mr. Nakasu signed a "Marital Settlement Agreement" that specifically provided that Mr. Nakasu was to assume responsibility for and pay their Federal tax liabilities. In July 2003, however, petitioner discovered that their Federal tax liabilities were not paid when the IRS contacted her about its

proposed collection activities.  Petitioner filed for innocent spouse relief in February 2004.[1]

Respondent's preliminary determination denied relief.  On September 29, 2004, petitioner appealed by filing a Form 12509, Statement of Disagreement.  On July 7, 2005, respondent issued his final determination, sustaining the denial of relief under section 6015(b), (c), and (f), concluding that petitioner was not eligible for relief under those provisions.

In the interim, Mr. Nakasu filed for bankruptcy.  The Federal tax liabilities were discharged on April 7, 2005, with respect to Mr. Nakasu.

### Discussion

### Burden of Proof

Except as otherwise provided in section 6015, petitioner bears the burden of proof with respect to her entitlement to innocent spouse relief.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

### Joint and Several Liability and Section 6015 Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and

---

[1] Petitioner testified that she filed for relief in October 2003.  The Form 12510, Questionnaire for Requesting, Spouse is dated Oct. 30, 2003.  But the Form 8857 is date stamped "RECEIVED FEB 25 2004".

liability for the resulting tax is joint and several. See also sec. 1.6013-4(b), Income Tax Regs. But the IRS may relieve a taxpayer from joint and several liability under section 6015 in certain circumstances.

Section 6015(b): Full or Apportioned Relief

Section 6015(b) provides full or apportioned relief for "an understatement of tax". Sec. 6015(b)(1)(B) and (2). Because petitioner's liabilities resulted from underpayments of the tax shown due on petitioner's joint returns, not understatements of tax, petitioner does not qualify for relief under section 6015(b). See Washington v. Commissioner, 120 T.C. 137, 146 (2003). Accordingly, respondent's determinations are sustained to the extent that they deny relief under section 6015(b) for each year.

Section 6015(c): Relief for Taxpayers No Longer Married, Legally Separated, or Not Living Together

Section 6015(c) provides relief from joint and several liability for spouses who filed a joint return if they are no longer married, are legally separated, or have lived apart for a 12-month period. Section 6015(c)(1) provides proportionate relief for "any deficiency which is assessed with respect to the return". Relief is not available under section 6015(c) with respect to an unpaid liability for the tax reported on the return. See id.

Petitioner does not qualify for relief under section 6015(c) because there are no deficiencies.  Accordingly, respondent's determinations are sustained to the extent that they deny relief under section 6015(c) for each year.

Section 6015(f):  Equitable Relief

The IRS may relieve an individual from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency and he does not qualify for relief under section 6015(b) or (c).

The Court reviews the IRS's denial of relief under section 6015(f) for abuse of discretion.  See Butler v. Commissioner, 114 T.C. 276, 292 (2000).  Under the abuse of discretion standard, the Court must determine whether the IRS exercised its discretion arbitrarily, capriciously, or without sound basis in fact when it denied relief.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).  The Court's review is limited, and the Court cannot substitute its judgment for that of the IRS and determine whether in the Court's opinion it would have granted relief.  See Patton v. Commissioner, 116 T.C. 206 (2001).

To guide IRS employees in exercising their discretion, the Commissioner has issued revenue procedures that list the factors they should consider; the Court also uses the factors when

reviewing the IRS's denial of relief.  See <u>Washington v. Commissioner</u>, <u>supra</u> at 147-152; Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.

<u>Rev. Proc. 2003-61, Sec. 4.01:  Seven Threshold Conditions for Relief</u>

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, begins with a list of seven threshold conditions that a taxpayer must satisfy in order to qualify for equitable relief.  The Court will not recite them.  Respondent concedes that petitioner satisfies the threshold requirements for 1999.  The Court finds that petitioner satisfies the threshold requirements with respect to the items that are not attributable to her for 2000 as determined by the Appeals officer handling the appeal.  To the extent that the unpaid liability consists of items attributable to petitioner, respondent did not abuse his discretion in denying relief because she does not satisfy the requirement:  "the liability from which the requesting spouse seeks relief is attributable to an item" of the other spouse.  See Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. at 297.

<u>Rev. Proc. 2003-61, Sec. 4.02:  Circumstances Ordinarily Allowing for Relief</u>

Where the requesting spouse satisfies the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth the circumstances in

which the IRS will ordinarily grant relief under section 6015(f) with respect to an underpayment of a properly reported liability. To qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the requesting spouse must: (1) No longer be married to, be legally separated from, or have not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when she signed the return that the nonrequesting spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted. See Rev. Proc. 2003-61, sec. 4.02(1), 2003-2 C.B. at 298.

Petitioner was divorced from Mr. Nakasu when she requested innocent spouse relief. Condition 1 is satisfied.

With respect to whether petitioner had knowledge or reason to know when she signed the return that Mr. Nakasu would not pay the tax liability, petitioner agrees that at the time she signed each return she knew that payments for tax shown on each return would not be made. Accordingly, petitioner does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02, and the Court need not discuss the third element.

Rev. Proc. 2003-61, Sec. 4.03: Other Factors

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03. Rev. Proc.

2003-61, sec. 4.03, 2003-2 C.B. at 298, contains a nonexhaustive list of factors that the IRS will consider and weigh when determining whether to grant equitable relief under section 6015(f).  The factors and the Court's analysis with respect to each factor are described below.

Marital Status

The IRS will take into consideration whether the requesting spouse is separated or divorced from the nonrequesting spouse. Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.

Petitioner was divorced from Mr. Nakasu when she filed her request.  This factor weighs in favor of relief.  See McKnight v. Commissioner, T.C. Memo. 2006-155 (stating that divorce weighs in favor of relief under Rev. Proc. 2003-61); see also Beatty v. Commissioner, T.C. Memo. 2007-167 (stating that remaining married or residing together is a neutral factor under Rev. Proc. 2003-61); cf. Butner v. Commissioner, T.C. Memo. 2007-136 (stating same under Rev. Proc. 2000-15).

Economic Hardship

Petitioner contends that she is unable to pay the tax liability because she has incurred substantial credit card debt to cover their living expenses while her second husband was unemployed on account of an illness.  Petitioner also testified that she pulled the equity out of her homes to cover their

expenses, and she is working three jobs and "still not making it."

The IRS will take into consideration whether the requesting spouse will suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298. Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses. Butner v. Commissioner, supra.

In determining a reasonable amount for basic living expenses, the Court considers, among other things: (1) The taxpayer's age, employment status and history, ability to earn, and number of dependents; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, and expenses necessary to the taxpayer's production of income; (3) the cost of living in the taxpayer's geographic area; (4) the amount of property available to satisfy the taxpayer's expenses; (5) any extraordinary circumstances; i.e., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. Petitioner must prove that the expenses qualify and that they are reasonable. See Monsour v. Commissioner, T.C. Memo. 2004-190.

The IRS has issued guidelines for allowable expenses, which include necessary and conditional expenses.[2] "Necessary expenses are those that meet the necessary expense test; i.e., 'they must provide for a taxpayer's and his or her family's health and welfare and/or the production of income' and they must be reasonable." Schulman v. Commissioner, T.C. Memo. 2002-129 n.6. There are three types of necessary expenses: (1) Those based on national standards; i.e., food, housekeeping supplies, clothing, and personal care products and services; (2) those based on local standards; i.e., housing, utilities, and transportation; and (3) other expenses, which are not based on national or local standards. Id. Conditional expenses are allowable if the tax liability, including projected accruals, can be fully paid within 5 years. Id.; 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1.10, at 17662, 17664.[3] A conditional expense may also be allowed for up to 1 year if it meets the necessary expense test and the taxpayer is unable to pay the tax liability within 5 years. Schulman v. Commissioner, supra; 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1.10, at 17662, 17664.

---

[2] The guidelines are published on the IRS's Web site at http://www.irs.gov/individuals/article/0,,id=96543,00.html (last visited Nov. 21, 2007). The amount listed as the national or local standard is effective as of Oct. 1, 2007.

[3] As a general rule, provisions within the Internal Revenue Manual are not binding on the IRS and convey no rights on taxpayers. See First Fed. Sav. & Loan Association of Pittsburgh v. Goldman, 644 F. Supp. 101, 103 (W.D.Pa. 1986).

Secured and unsecured debts, i.e., credit card debt, are examples of conditional expenses.  See Lemann v. Commissioner, T.C. Memo. 2006-37 n.12; 2 Administration, Internal Revenue Manual (CCH), sec. 5.15.1.10, at 17662, 17664.

Respondent's "Appeals Case Memo" states only:  "Economic Hardship.  Not in favor - RS has not demonstrated an economic hardship."

Petitioner claimed on her Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, expenditures that were not properly substantiated or were in excess of the national or local standard.  Accordingly, the Court will use the following amounts in its analysis of petitioner's claim of economic hardship:

| Expenditure | Amount Allowed |
| --- | --- |
| Food, clothing, misc. | [1]$1,331.00 |
| Housing and utilities | [1]2,239.00 |
| Transportation | [1]1,344.00 |
| Other "secured debt" | [2]2,095.94 |
| Other "unsecured debt" | -0- |

[1]  Based on the national or local standard.
[2]  Taxes, insurance, and first and second mortgages on the rental property.

Petitioner's Form 433-A indicates that petitioner and her second husband's total monthly income is $6,050.  On her Form 433-A, petitioner claimed that her rental property's current value is $325,000 with encumbrances totaling $369,000. Petitioner claimed $410,000 as the current value of her principal

residence with encumbrances totaling $408,000. But petitioner's mortgage statements show that her principal residence is encumbered only to the extent of $387,811.39, giving her potential equity of $22,188.61.

At trial, petitioner testified that a silent third party, her parents, gave her the money to acquire the second home to "share in the equity", so they encumbered the residence to the extent of $22,000. But petitioner also testified that title to the property was held in her name only, and she failed to offer any evidence proving her parents' interest, other than her self-serving testimony. Petitioner also did not offer any evidence of the properties' current values to support her valuations. Substantiation of her parents' interest and the properties' values is crucial in view of the $22,188.61 in potential equity.[4]

Additionally, it is difficult to find that the economic hardship factor weighs in favor of relief in view of the fact that petitioner used moneys received after her divorce to acquire items with her second husband (i.e., new cars/second home) rather than satisfying her Federal tax liabilities. The Court is also disturbed by the fact that petitioner has not sought repayment from Mr. Nakasu for his alleged misappropriation of the proceeds received from the sale of their marital home.

---

[4] Although the rental property is currently rented with a negative cashflow, there exists the possibility that the property can be rented for profit or sold at a gain.

On the basis of the foregoing and petitioner's $21,228.67 net worth (i.e., $28,238.61 (income and potential equity) less $7009.94 (total living expenses)), the Court finds that petitioner has not shown that she will suffer economic hardship if she is not relieved of the tax liability. Consequently, this factor weighs against granting relief. See Banderas v. Commissioner, T.C. Memo. 2007-129 (stating that lack of economic hardship weighs against relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, T.C. Memo. 2007-136 (same under Rev. Proc. 2000-15).

Knowledge or Reason To Know

The IRS will also consider whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298. In the case of a reported but unpaid liability, the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid. See Washington v. Commissioner, 120 T.C. at 151; see also Feldman v. Commissioner, T.C. Memo. 2003-201, affd. 152 Fed. Appx. 622 (9th Cir. 2005). Petitioner must establish that: (1) At the time she signed the return for each of the years at issue, she had no knowledge or reason to know that the tax reported on each return would not be paid; and (2) it was reasonable for her to believe that Mr.

Nakasu would pay the tax reported thereon.  See <u>Ogonoski v. Commissioner</u>, T.C. Memo. 2004-52; <u>Collier v. Commissioner</u>, T.C. Memo. 2002-144.

Petitioner conceded that at the time she signed each return, she knew that remittances for the tax reported thereon would not be included.  In 1998, petitioner and Mr. Nakasu received a discharge in bankruptcy.  Petitioner was aware of their financial difficulties.  As a result, petitioner cannot establish that at the time she signed each return it was reasonable for her to believe that the tax would be paid or that she had no reason to know that the tax reported thereon would not be paid.  See, e.g., <u>Banderas v. Commissioner</u>, <u>supra</u>.  This factor weighs against relief.  See <u>Beatty v. Commissioner</u>, T.C. Memo. 2007-167 (applying Rev. Proc. 2003-61 and finding that knowledge or reason to know weighs against relief); <u>Fox v. Commissioner</u>, T.C. Memo. 2006-22 (same); cf. <u>Levy v. Commissioner</u>, T.C. Memo. 2005-92 (applying Rev. Proc. 2000-15 and stating that lack of knowledge weighs in favor of relief while knowledge or reason to know weighs against relief).

<u>Nonrequesting Spouse's Legal Obligation</u>

The IRS will also consider whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298.  But if

the requesting spouse knew or had reason to know at the time the agreement was entered into that the nonrequesting spouse would not pay the liability, then this factor will not weigh in favor of relief.  See id.

The "Marital Settlement Agreement" provided that Mr. Nakasu was to assume and pay the Federal tax liabilities.  There is no evidence that petitioner knew at the time they entered into the "Marital Settlement Agreement" in 2002 that Mr. Nakasu would not pay the Federal tax liabilities.  But the Court finds that petitioner had reason to know at the time they entered into the agreement that Mr. Nakasu would not pay the Federal tax liabilities.  Petitioner testified that she was the one who "made the call to enter into the installment agreement" in 2001 because she believed that Mr. Nakasu had a pattern of not paying his debts due to his procrastination.  This factor is neutral.  Id.; see also Magee v. Commissioner, T.C. Memo. 2005-263 (applying Rev. Proc. 2003-61); cf. Billings v. Commissioner, T.C. Memo. 2007-234 (applying Rev. Proc. 2000-15).

Significant Benefit

The IRS will consider whether the requesting spouse received any significant benefit beyond normal support as a result of the unpaid income tax liability.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.

Respondent represents that there is significant benefit beyond normal support due to the unpaid tax liabilities; i.e., the failure to pay the tax "resulted in significant additional income."

The significant benefit factor probes whether the requesting spouse received, directly or indirectly, from the assets or income resulting from the unpaid tax liability any benefit in excess of normal support. Sec. 1.6015-2(d), Income Tax Regs.; Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299 (citing section 1.6015-2(d), Income Tax Regs.). In determining whether the requesting spouse significantly benefited from the unpaid tax liabilities, the Court considers whether the requesting and nonrequesting spouses were able to make expenditures that they would not have been able to make otherwise. See Levy v. Commissioner, supra (and cases cited therein). Additionally, evidence of a significant benefit "may consist of transfers of property or rights to property, including transfers that may be received several years" later. Sec. 1.6015-2(d), Income Tax Regs.

There is nothing in the record regarding petitioner's and Mr. Nakasu's lifestyle or spending habits during their marriage or any other evidence indicating that petitioner received any significant benefit from the unpaid Federal tax liabilities. Therefore, the Court concludes that this factor weighs in favor

of relief.  See <u>Magee v. Commissioner</u>, <u>supra</u> (stating that lack of significant benefit weighed in favor of relief under Rev. Proc. 2003-61); cf. <u>Butner v. Commissioner</u>, <u>supra</u> (stating that lack of significant benefit weighed in favor of relief under former section 6013(e) notwithstanding that Rev. Proc. 2000-15 stated that it was neutral); <u>Ferrarese v. Commissioner</u>, T.C. Memo. 2002-249.

<u>Compliance With Federal Tax Laws</u>

The IRS will take into consideration whether the requesting spouse had made a good faith effort to comply with Federal tax laws in succeeding years.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.

Petitioner and Mr. Nakasu received an extension until August 15, 2002, to file their 2001 joint Federal income tax return; the IRS received the return on November 27, 2002.  Petitioner testified that she believed that Mr. Nakasu "forged" her name on that return.  Petitioner has not otherwise renounced the joint return or filed a separate return for that year.

Petitioner's 2002 return was timely filed and showed an overpayment that was applied to 2000.

Petitioner received an extension to file her 2003 return until October 15, 2004; however, she filed the return late and without remittance of the tax on March 3, 2005.  At trial, petitioner testified that she did not timely file because the

certified public accountant (C.P.A.) she hired to prepare her request for innocent spouse relief advised her not to file and to seek an extension until the IRS issued its determination. At trial, however, petitioner testified that she went to the C.P.A.'s office on April 15, 2004, to sign her return, she told him to file her return notwithstanding his advice, and he claimed that he could not prepare her return because he did not have all of the paperwork. Petitioner made a series of partial payments and subsequently requested an abatement of the penalties and interest, which the IRS granted, and the resulting overpayment was refunded.

Petitioner received an extension to file her 2004 return until August 15, 2005. Petitioner filed her return on April 18, 2005; however, she did not submit a remittance of the tax until June 3, 2005. Petitioner testified that she did not have the money to pay the tax timely, but she paid it as soon as she could.

Petitioner and her second husband timely filed and received a refund for 2005.

The Court finds that petitioner has not complied with Federal tax laws despite the two timely filed returns in 2002 and 2005. Petitioner would not have filed in 2001 but for the allegedly forged return filed by Mr. Nakasu. Petitioner did not establish that she had reasonable cause for failing to timely pay

her 2004 tax liability since the IRS assessed the penalty, petitioner paid the penalty, and the penalty was not otherwise abated by the IRS. See, e.g., sec. 301.6651-1(c), Proced. & Admin. Regs. (discussing a reasonable cause defense that the taxpayer may raise with the IRS if he establishes, among other things, that he was unable to pay the liability or would suffer undue hardship if he paid the liability on the due date). Finally, despite the fact that the IRS abated the interest and penalties with respect to the 2003 return, the Court does not find credible petitioner's testimony as to her excuse for not filing timely, given that the cover letter addressed to petitioner from the C.P.A. states:

> Enclosed is your 2003 Federal Individual Income Tax Return. * * * There is a balance due of $2,778. Make your check payable to the 'United States Treasury' and mail your Federal return with Form 1040-V payment voucher on or before October 15, 2004 * * *.

Therefore, the Court finds that the compliance factor weighs against relief. See Fox v. Commissioner, T.C. Memo. 2006-22 (stating noncompliance weighs against relief under Rev. Proc. 2003-61); Beatty v. Commissioner, T.C. Memo. 2007-167 (stating that one delinquently filed return, which showed a refund due, and the other facts and circumstances were not significant factors weighing against relief in that case, and the Commissioner argued that the compliance factor weighed in favor of relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner,

T.C. Memo. 2007-136 (stating that noncompliance weighs against relief under Rev. Proc. 2000-15).

Abuse

The IRS will also consider whether the nonrequesting spouse abused the requesting spouse. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299. The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the requesting spouse's knowledge or reason to know. Id.

Petitioner did not claim on her Form 8857 or on her Form 12510 that she was abused. In a letter dated February 6, 2004, petitioner stated that by the end of 2001, Mr. Nakasu had "gotten involved * * * [in swinging]. He manipulated and threatened me so I went along with it for one month." In her Form 12509, petitioner stated that after their house sold in 2002, she asked Mr. Nakasu if the taxes were paid, and he would curse and threaten her just for asking. Petitioner further stated that Mr. Nakasu manipulated her, that she was afraid of him, and that he threatened to take the children away from her. Petitioner also claimed that after the IRS contacted her in 2003 about the unpaid liability, she questioned Mr. Nakasu about the unpaid taxes, and he called Child Protective Services on her. At trial, petitioner testified that she was not physically abused, but rather, she was verbally abused.

Petitioner's claim of abuse is self-serving, and she points to no specific incidents or threats at or near the time she signed the return. See In re Hinckley, 256 Bankr. 814 (Bankr. M.D. Fla. 2000) (stating that abuse at that time is a significant factor); see also Collier v. Commissioner, T.C. Memo. 2002-144 (stating that the Court would not rely on the lay witness's opinion regarding the taxpayer's alleged verbal and mental abuse because the Court found it to be conclusory and lacking in specificity as to the facts). Putting aside the "name calling" and other remarks, petitioner's allegations of abuse involve periods after she signed the return and, therefore, do not weigh in favor of relief. See, e.g., Krasner v. Commissioner, T.C. Memo. 2006-31 (stating that the police reports submitted to verify the taxpayer's claim of abuse were unsupportive because they dated to a period after the taxpayer signed the return). The Court does not find that the "name calling" and other remarks were of such magnitude as to warrant weighing in favor of relief. See Ogonoski v. Commissioner, T.C. Memo. 2004-52 (stating that the abuse factor is neutral where there is no evidence of physical or mental abuse "in any sense to which the tax law or common experience will accord any recognition").

Finally, there is nothing in the record, other than petitioner's self-serving statements, that corroborates the alleged abuse. See Baumann v. Commissioner, T.C. Memo. 2005-31

(stating that the taxpayer had produced third-party records confirming her abuse allegations); Fox v. Commissioner, supra (stating same).

The Court finds that this factor is neutral. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299 (stating that the presence of abuse weighs in favor of relief while lack of abuse does not weigh against relief); see also Magee v. Commissioner, T.C. Memo. 2005-263 (stating that lack of abuse is a neutral factor under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (stating same under Rev. Proc. 2000-15).

Mental or Physical Health

The IRS will take into consideration whether the requesting spouse was in poor mental or physical health on the date the requesting spouse signed the return or at the time relief was requested. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

There is no evidence in the record that petitioner's mental or physical health was poor; therefore, this is a neutral factor. See id.; see also Magee v. Commissioner, supra.

Conclusion:  Weight of the Factors

Although the decision is close, the Court concludes that the Appeals officer did not act arbitrarily, capriciously, or without sound basis in fact, nor is there anything "fundamentally wrong" with the IRS's determination. See Johnson v. J.B. Hunt Transp.,

Inc., 280 F.3d 1125, 1131 (2002).  Consequently, respondent's denial of relief was not an abuse of discretion, and it is not inequitable to hold petitioner liable for the unpaid taxes.

To reflect the foregoing,

Decision will be entered for respondent.