T.C. Summary Opinion 2010-73

UNITED STATES TAX COURT

ANTOINETTE WITHERS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21019-08S.                    Filed June 10, 2010.

Antoinette Withers, pro se.

Timothy J. Driscoll, for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent

section references are to the Internal Revenue Code. All Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from petitioner's request dated July 8, 2007, for "innocent spouse relief" from her former husband's portion of their joint and several Federal income tax liabilities of $1,945 and $753 for 2004 and 2005, respectively. Petitioner requested relief under section 6015(f), the equitable provision. Respondent issued a notice of final determination dated June 5, 2008, denying petitioner's request. The issue for decision is whether petitioner is entitled to equitable relief under section 6015(f) from her former husband's portion of their 2004 and 2005 joint Federal income tax liabilities.

                              Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Illinois when she filed her petition.

Petitioner is a high school graduate with less than a year of college education. Petitioner has worked at Swiss America Importing Co. (Swiss America) for 14 years. Petitioner started as a temporary file clerk, and because of her excellent work performance Swiss America promoted her to assistant director, her position as of the date of trial. Petitioner's responsibilities as an assistant director include negotiating purchase agreements

and managing junior staff.  Petitioner earned $38,404 in 2004 and $36,904 in 2005.  Petitioner has not received a salary increase since 2007.

While working at Swiss America petitioner met Warren Shields (Mr. Shields), who was employed there as a production worker. The couple began dating, and they married in July 2002.  Before and during the marriage petitioner was not privy to Mr. Shields' finances or any of his financial debts, and they did not share a joint bank account.  Additionally, as discussed below, during most of the couple's marriage, including the years at issue, petitioner paid all the household expenses from her income while Mr. Shields spent most of his income on gambling and other nonhousehold matters.

In 2003 petitioner and Mr. Shields timely filed their joint 2002 Federal income tax return.  Petitioner, expecting a significant overpayment to be refunded, was surprised to learn that the Internal Revenue Service (IRS) had applied the refund to offset Mr. Shields' outstanding student loan debt.  Further, Mr. Shields had independently reduced the amount of Federal income tax withheld from his wages at Swiss America.

During 2004 Mr. Shields' indifference towards household matters worsened.  Specifically, Mr. Shields did not financially contribute toward the purchase of the couple's townhome, resulting in petitioner's titling the home solely in her name.

Mr. Shields also did not make any effort to contribute to the couple's household or living expenses. Thus, petitioner became solely responsible for paying the mortgage and the household expenses. Petitioner and Mr. Shields filed a joint 2003 Federal income tax return, which reported an income tax liability that was not paid at the time of filing.

As Mr. Shields' financial indifference increased, the couple's relationship further deteriorated. Petitioner suspected that Mr. Shields was gambling, but she was unsure whether he was gambling with all of his weekly wages or simply hiding his income from her. Although the couple lived together, their financial problems created so much tension that they stopped speaking to one another. Petitioner and Mr. Shields did not file a 2004 or 2005 Federal income tax return, and their 2003 Federal income tax liability remained unpaid.

By 2006 petitioner was overwhelmed by the couple's financial obligations and could not make ends meet. Petitioner felt alone and trapped in a situation that had grown out of control. Petitioner could not sleep, and the stress was affecting her emotionally and physically. Worried about the outstanding 2003 tax liability and the couple's failure to file 2004 and 2005 returns, petitioner contacted the IRS in July 2006 seeking advice about resolving these problems. After being advised to file the

delinquent returns, petitioner urged Mr. Shields to help her file the returns by providing his Forms W-2, Wage and Tax Statement.

Although petitioner knew the couple's marriage was failing and thought they might separate, she naively believed that filing the returns would help resolve the couple's financial and personal issues. In November 2006 petitioner, in hopes of saving the relationship, engaged a national tax return preparation firm to complete the returns, and she asked Mr. Shields to sign them. Petitioner's request caused the couple to argue about signing the returns. However, in mid-December the couple filed the delinquent 2004 and 2005 joint Federal income tax returns, which reported liabilities that they were unable to pay. Less than 2 weeks later, Mr. Shields moved out of the townhouse permanently and the couple legally separated.

According to the transcripts of account for 2004 and 2005, petitioner entered into an installment agreement with the IRS on January 3, 2007. The IRS processed the 2004 and 2005 Federal income tax returns on January 8, 2007. Petitioner made one installment payment of $24 on February 26, 2007. Petitioner timely filed her 2006 Federal income tax return, electing married filing separately status and reporting an overpayment. The IRS applied the overpayment to the couple's outstanding liabilities, extinguishing their 2003 joint Federal income tax liability and applying $257 against their 2004 joint income tax liability.

During this time petitioner hired an attorney and filed for a divorce. Mr. Shields did not contest or bear any of the costs of the divorce. On May 22, 2007, an Illinois court entered a decree dissolving the marriage. Pursuant to the final judgment for dissolution of marriage, each party was responsible to pay one-half of the balance of the 2004 and 2005 Federal income tax liabilities, which at this time was $2,769 and $1,060, respectively. Specifically, Mr. Shields was to provide petitioner with $150 per month and petitioner was responsible for forwarding the couple's total $300 monthly installment payment to the IRS.

In June 2007 Mr. Shields did not make the $150 required payment, and it became clear to petitioner that Mr. Shields was not going to comply with the Illinois court's order. As a result, petitioner filed Form 8857, Request for Innocent Spouse Relief, together with Form 12510, Questionnaire for Requesting Spouse, both dated July 8, 2007. The IRS forwarded petitioner's request to its "Innocent Spouse" unit in the Cincinnati Service Center. Her Form 12510 included a completed current Average Monthly Household Income and Expenses worksheet. Petitioner reported total monthly income of $2,386 and expenses of $2,109, resulting in a monthly surplus of $277. Petitioner also submitted a statement dated July 24, 2007, requesting the following types of relief: (1) That the IRS separate the

couple's joint 2004 and 2005 liabilities and with respect to her portion stated: "if a balance is due, I would like to pay that."; (2) "Innocent Spouse Relief"; and (3) "Equitable Relief."

Petitioner filed for similar relief in Missouri related to the couple's outstanding joint Missouri income tax liability. The State granted petitioner relief for the portion of the liability attributable to Mr. Shields, and petitioner subsequently satisfied her portion of the Missouri income tax liability.

The IRS "Innocent Spouse" unit in Cincinnati complied with the first part of petitioner's request by preparing an "Innocent Spouse Allocation Worksheet" dated October 17, 2007, showing the allocation to Mr. Shields of $902 and $463 of the couple's total 2004 and 2005 joint Federal income tax liabilities. The unit also considered granting relief to petitioner from Mr. Shields' portion of the liabilities. Nevertheless, the Cincinnati Compliance Center issued a preliminary determination letter dated October 26, 2007, denying petitioner's request for equitable relief under section 6015(f) because petitioner had failed to prove that she had reason to believe the taxes would be paid at the time she signed the returns.

On October 30, 2007, petitioner filed Form 12509, Statement of Disagreement, requesting Appeals Office consideration and reiterated that she would pay her portion. The IRS assigned the

case to an Appeals officer, who determined that petitioner met the threshold requirements to qualify for equitable relief under section 6015(f) as set forth in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297. However, after applying the criteria set forth in Rev. Proc. 2003-61, secs. 4.02 and 4.03, 2003-2 C.B. at 298, the Appeals officer determined that petitioner had not established that it would be "inequitable to hold petitioner liable for the balance due on both tax years." Accompanying the final notice of determination denying relief, the Appeals Office enclosed a detailed explanation of the Appeals officer's section 6015 analysis.

Petitioner filed her petition challenging the determination and requesting that the Court grant equitable relief to her from Mr. Shields' portion of their 2004 and 2005 joint Federal income tax liabilities. Petitioner also stated that she would pay her portion. Respondent notified Mr. Shields of petitioner's filing of the petition and his right to intervene, but Mr. Shields chose not to intervene. Respondent did not call Mr. Shields as a witness, and petitioner had had no contact with Mr. Shields as of the date of trial.

Petitioner timely filed her individual Federal income tax returns for 2006, 2007, and 2008. She increased the amount of Federal income tax withheld from her salary and has paid all other Federal and State income tax liabilities. Additionally,

petitioner continues to live in the townhouse she purchased in 2004. She does not live a lavish lifestyle and does not take vacations.

Discussion

I.  <u>Overarching Considerations</u>

   A.  <u>Joint and Several Liability</u>

When two individuals file a joint Federal income tax return, they are each responsible for the accuracy of the return and are liable jointly and severally for the entire tax liability. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000); sec. 1.6013-4(b), Income Tax Regs.

   B.  <u>Section 6015(f) Equitable Relief</u>

Section 6015 provides relief from joint and several liability in certain circumstances. As relevant here, if the taxpayer does not qualify for relief under section 6015(b) or (c), then the taxpayer may seek an equitable remedy under section 6015(f), which provides relief if, after taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for the unpaid tax or any portion thereof. <u>Butler v. Commissioner</u>, <u>supra</u> at 292. Petitioner does not qualify for relief under section 6015(b) or (c) because the 2004 and 2005 joint Federal income tax returns reported tax due that was not paid. Therefore, the 2004 and 2005 liabilities are due to underpayments of tax and not understatements of tax or

deficiencies.  Accordingly, petitioner's sole avenue for relief is through section 6015(f).

C.  Jurisdiction

As pertinent here, section 6015(e) authorizes a taxpayer who has been denied equitable relief under subsection (f) to petition this Court for relief from a final Appeals determination.  In 2006 Congress amended section 6015(e)(1) confirming the Court's jurisdiction to determine the appropriate relief available under section 6015(f).  Porter v. Commissioner, 132 T.C. 203 (2009).  Petitioner's liabilities remain unpaid, and accordingly, we have jurisdiction.

D.  Standard and Scope of Review

When determining whether a taxpayer is entitled to equitable relief under section 6015(f), the Court reviews the matter de novo, not for abuse of discretion, and may consider evidence introduced at trial that was not included in the administrative record.  Olson v. Commissioner, T.C. Memo. 2009-294 (citing Porter v. Commissioner, supra and Porter v. Commissioner, 130 T.C. 115, 117 (2008)).

E.  Burden of Proof

Except as otherwise provided, under section 6015(f) the taxpayer bears the burden of proof and must demonstrate entitlement to equitable relief from the tax liability as an

"innocent spouse".  Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

II.  <u>Analysis of Equitable Relief Under Section 6015(f)</u>

Section 6015(f) provides, in relevant part, that the Secretary may relieve an individual from joint and several liability if, after taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for the unpaid tax.  The Commissioner has prescribed guidelines in Rev. Proc. 2003-61, <u>supra</u>, for determining whether equitable relief is warranted with respect to the requesting spouse's liabilities for all or part of any unpaid tax.

A.  <u>Threshold Criteria for Granting Relief</u>

The review process begins with seven threshold requirements set forth in Rev. Proc. 2003-61, sec. 4.01, that a taxpayer must satisfy before the Commissioner will consider equitable relief. We need not address the threshold criteria since respondent concedes that petitioner fulfills those conditions.

B.  <u>Circumstances in Which Relief Is Ordinarily Granted</u>

Where a requesting spouse has satisfied the threshold criteria in Rev. Proc. 2003-61, sec. 4.01, the Commissioner will ordinarily grant equitable relief if the requesting spouse meets the elements set forth under Rev. Proc. 2003-61, sec. 4.02.  To qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the requesting spouse must:  (1) No longer be married to the

nonrequesting spouse on the date relief was requested; (2) have no knowledge or reason to know at the time the return was signed that the nonrequesting spouse would not pay the tax liability; and (3) suffer an economic hardship if relief is not granted.

Respondent and the Court agree petitioner meets the first requirement, having divorced Mr. Shields on May 22, 2007, before filing her application for relief in July 2007. However, we also agree with respondent that petitioner does not meet the second element.

In regard to the second element, where a couple accurately reported but did not pay the balance due, the relevant standard for determining the knowledge or reason to know element is whether: (1) When the requesting spouse signed the return, the requesting spouse had knowledge or reason to know that the tax reported on the return would not be paid; and (2) it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the tax due. Bruen v. Commissioner, T.C. Memo. 2009-249; Rev. Proc. 2003-61, sec. 4.02(1)(b). Further, in making this determination the reviewer should consider the requesting spouse's level of education, any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's involvement in household financial matters, and any lavish or unusual expenditures compared with past spending

levels. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(C), 2003-2 C.B. at 298.

Respondent determined that petitioner had requisite knowledge because: (1) Petitioner knew her former spouse was having financial problems; (2) petitioner was the primary financial contributor to the household; (3) petitioner was aware that her former spouse had reduced the withholding of tax from his wages; and (4) petitioner knew or had reason to know that Mr. Shields would not pay the taxes due at the time their joint Federal income tax returns were signed.

Because we find that petitioner is a smart and responsible person, we find that her lacking knowledge is improbable. The main reason behind the couple's financial problems was Mr. Shields' irresponsibility and indifference with respect to financial matters. Petitioner also knew that since 2003 Mr. Shields had delinquent student loans and had reduced the amount of Federal income tax withheld from his wages. We speculate that Mr. Shields reduced his withholding to avoid having any refunds because he knew that any refund would be applied to his student loan obligations.

Even if this speculation is incorrect, we find that it strains credibility to conclude that at the time petitioner signed the 2004 and 2005 returns in December 2006, she believed that she or Mr. Shields would pay the unpaid balances. The

couple was on the verge of separating, petitioner knew of her own financial restraints, and she knew of Mr. Shields' financial irresponsibility. Thus, petitioner fails to meet the second element and does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02.

C.  Factors for Determining Whether To Grant Equitable Relief

Where, as here, the requesting spouse has satisfied the threshold criteria of Rev. Proc. 2003-61, sec. 4.01, but has failed to meet the conditions set forth in Rev. Proc. 2003-61, sec. 4.02, she may nevertheless obtain relief under the facts and circumstances test of Rev. Proc. 2003-61, sec. 4.03. Sec. 4.03, which provides a nonexclusive list of factors for determining whether full or partial equitable relief is warranted under section 6015(f) including: (1) Whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse would suffer economic hardship if relief were not granted; (3) whether the requesting spouse knew or had reason to know of the item giving rise to the deficiency; (4) whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement; (5) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency; and (6) whether the requesting spouse has made a good faith

effort to comply with tax laws for the taxable years following the taxable year to which the request for such relief relates.

Other factors that may be considered under Rev. Proc. 2003-61, supra, include: (1) Whether the nonrequesting spouse abused the requesting spouse; and (2) whether the requesting spouse was in poor mental or physical health at the time he or she signed the tax return or at the time he or she requested relief. Id. sec. 4.03(2)(b), 2003-2 C.B. at 299. However, where the nonrequesting spouse did not abuse the requesting spouse and the requesting spouse was not in poor mental or physical health at the time the return was signed or at the time relief was requested, the abuse factor and the mental or physical health factor will not be taken into account.

Rev. Proc. 2003-61, sec. 4.03, provides that no single factor is determinative and that all relevant factors will be considered regardless of whether enumerated in that section. We now apply the factors to the facts in this case.

### 1. Marital Status

As discussed above, the first factor, marital status, is satisfied because petitioner and Mr. Shields were divorced before July 2007 when petitioner filed the application for relief. Id. sec. 4.03(2)(a)(i); see also McKnight v. Commissioner, T.C. Memo. 2006-155 (divorce weighs in favor of relief). Thus, this factor favors relief.

2. <u>Economic Hardship</u>

Another factor is whether the requesting spouse will suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii). The Commissioner determines economic hardship relying on rules that the Secretary set forth in section 301.6343-1(b)(4), Proced. & Admin. Regs. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii). The regulation defines economic hardship as the condition where a taxpayer is "unable to pay his or her reasonable basic living expenses." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. In determining a reasonable amount of basic living expense, the Commissioner considers information such as: (1) The taxpayer's age, employment status, history, and ability to earn; (2) the amount reasonably necessary for living expenses such as food, clothing, housing, medical expenses, insurances, current tax payments, and child support; (3) the cost of living in the geographic area in which the taxpayer resides; and (4) any extraordinary circumstances such as a medical catastrophe. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

In determining whether petitioner would suffer economic hardship, the Appeals officer relied on the compliance center's calculation that petitioner had a monthly surplus of $577, which did not include petitioner's $300 monthly credit card expense. The record is silent as to why the Appeals officer excluded the $300 monthly credit card expense.

At trial almost 2 years after the Appeals officer's determination, petitioner stated that her monthly disposable income had decreased as a result of withholding more Federal income tax from her earnings and from paying higher monthly mortgage and utility bills.  Petitioner did not provide documentation substantiating these claims, and respondent challenged petitioner's statements.

We find that even without precise numbers detailing petitioner's current economic condition, petitioner is in a tight financial situation.  However, because petitioner failed to substantiate her monthly income and expenses or that she would suffer an economic hardship, we conclude that this factor is neutral.

### 3.  Knowledge or Reason To Know

As discussed above and below, petitioner failed to establish that she did not know or have reason to know, when she signed the returns, that the taxes would not be paid.  We comment further only in regard to respondent's contention that this factor weighs heavily against granting petitioner relief.  We note that no factor, in and of itself, is determinative.  Rev. Proc. 2003-61, sec. 4.03.  Rev. Proc. 2003-61, supra, superseded Rev. Proc. 2000-15, 2000-1 C.B. 447, and specifically downgraded the knowledge or reason to know factor from a heavily weighted factor to simply one of many equally weighted factors.  Rev. Proc. 2003-

61, sec. 3.02, 2003-2 C.B. at 297; cf. Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. at 449.  Thus, this factor weighing against relief is equally weighted among all other factors.

　　　　4.  Nonrequesting Spouse's Legal Obligation

The next enumerated factor is whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv).  However, if the requesting spouse knew or had reason to know when the agreement was entered into that the nonrequesting spouse would not pay the liability, then this factor will not weigh in favor of relief.  Id. Nevertheless, this Court has held that regardless of the requesting spouse's opinion of the nonrequesting spouse's rectitude or sense of responsibility, the requesting spouse is not required to assume that the nonrequesting spouse would defy a court order when he or she stated no intention to do so and had the means to comply.  Bruen v. Commissioner, T.C. Memo. 2009-249.

The 2007 divorce decree provides that petitioner and Mr. Shields agreed to pay their own debts and that each would be responsible for one-half of the liabilities owed to the IRS for 2004 and 2005.  The record does not indicate that petitioner knew or should have known when she entered into the agreement incorporated in the divorce decree that Mr. Shields would not fulfill the court's order.  While the State court does not have

the power to adjust the parties' Federal income tax liabilities, we find it equitable for our determination to assign weight to the judgment of the court since it had plenary responsibility for allocating the couple's debts.  See id.  Therefore, this factor weighs in favor of granting relief.

### 5.  Significant Benefit

Another factor is whether the requesting spouse received significant benefit beyond normal support as a result of the unpaid tax liability.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.  Respondent concedes that petitioner did not receive a significant benefit as a result of the unpaid tax liabilities and the record does not suggest otherwise.  Therefore, we conclude that this factor weighs in favor of relief.  See Magee v. Commissioner, T.C. Memo. 2005-263 (lack of significant benefit weighs in favor of relief).

### 6.  Compliance With Federal Tax Laws

An additional pertinent factor is whether the requesting spouse made a good-faith effort to comply with the Federal income tax laws in the succeeding years.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.  Respondent concedes petitioner has complied with Federal income tax laws and filing requirements for 2006, 2007, and 2008.  Additionally, petitioner made efforts to comply by initiating telephone calls with the IRS

either seeking advice or providing information.  Therefore, this factor weighs in favor of relief.

### 7.  Other Factors

With respect to the other factors that Rev. Proc. 2003-61, sec. 4.03, provides, abuse and poor mental or physical health of the requesting spouse, Mr. Shields was an indifferent spouse and petitioner was stressed by their financial difficulties. However, the record does not indicate that these factors rose to the level that Rev. Proc. 2003-61, sec. 4.03, requires to weigh in favor of relief.  Therefore, these factors are neutral.

## III.  Conclusion:  Weight of the Factors

To aid the reader we summarize below the results of the above analysis:

1.  Marital status--favors relief.
2.  Economic hardship--neutral.
3.  Knowledge or reason to know--disfavors relief.
4.  Legal obligation--favors relief.
5.  Significant benefit--favors relief.
6.  Compliance with Federal tax laws--favors relief.
7.  Abuse and poor mental or physical health - neutral.

Accordingly, one factor disfavors relief, two or three are neutral, and four favor relief.  The knowledge factor weighs against petitioner's entitlement to section 6015(f) relief; however, in considering her entitlement to relief under section 6015(f), the knowledge factor is only one factor among many to be taken into account, and as discussed supra, the Commissioner has

explicitly downgraded the factor's significance.  Rev. Proc. 2003-61, sec. 3.02.

Considering the foregoing, and after weighing the factors collectively, we hold that relief is warranted for the portion of the unpaid 2004 and 2005 tax liabilities attributable to Mr. Shields.  Therefore, petitioner is entitled to equitable relief from joint and several liability under section 6015(f) for Mr. Shields' allocated portion of the couple's unpaid 2004 and 2005 Federal income tax liabilities.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.