T.C. Memo. 2005-263

UNITED STATES TAX COURT

DOROTHY ANN MAGEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5682-04L.          Filed November 16, 2005.

    P filed a petition for judicial review pursuant to
sec. 6330, I.R.C., in response to a determination by R
that levy action was appropriate for taxable year 1996.

    <u>Held</u>: R's determination to proceed with collection
action is sustained.

    <u>Held</u>, <u>further</u>, under the facts and circumstances,
R's denial of equitable relief under sec. 6015(f),
I.R.C., is sustained.


Dorothy Ann Magee, pro se.

<u>Fred E. Green, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This proceeding arises from a petition filed in response to a Notice of Determination Concerning Collection Action under Section 6330 and a Notice of Determination Concerning Your Request for Relief pursuant to section 6015(f).[1]

The issues for decision are:

(1) Whether petitioner was required to file a Federal income tax return for 1996;

(2) whether respondent abused his discretion in determining that collection action under section 6330 was appropriate; and

(3) whether respondent abused his discretion in denying petitioner's request for relief from joint and several liability under section 6015(f).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time this petition was filed, petitioner resided in Las Vegas, Nevada.

I.  <u>Background</u>

Petitioner and Keith R. Magee (Mr. Magee) were married, but they separated at some time during calendar year 1996. Petitioner and Mr. Magee had a daughter during their marriage who

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

was born in 1993. Petitioner has custody of her daughter and has struggled very hard to support herself and her daughter despite difficult circumstances. During 1996, petitioner was a newspaper carrier. Following her divorce from Mr. Magee, petitioner filed for bankruptcy, but she has since then purchased a home. Other than the fact that Mr. Magee failed to make court-ordered child support payments, the record does not provide any specific information regarding Mr. Magee or any information with respect to the manner in which petitioner and Mr. Magee conducted their financial affairs.

## II. Procedural History

Petitioner and Mr. Magee filed a joint Form 1040, U.S. Individual Income Tax Return, for the 1996 taxable year on July 26, 1998, prepared at the behest of Mr. Magee by a professional tax return preparer. The tax return showed the following: Total income of $38,177; tax of $4,474; tax paid of $2,469 (by Mr. Magee's withholdings); and a balance of tax due of $2,005. As reported on Schedule C, Profit or Loss From Business Income, of the joint tax return, petitioner grossed $11,032 from the delivery of newspapers and claimed $7,376 in expenses. The return was processed, and the tax shown due on the return was assessed on August 24, 1998.

A notice and demand was mailed to petitioner on August 24, 1998, at petitioner's last known address as listed on her 1996 return. Respondent transferred and applied petitioner's tax

credits from 2000 and 2002 in the amounts of $500 and $400 on September 30, 2001, and August 4, 2003, respectively, to partially offset petitioner's and Mr. Magee's unpaid 1996 joint liability. Petitioner was notified of these transfers at her last known address.

A notice of intent to levy was mailed to petitioner's last known address on September 30, 2003. A Final Notice of Intent to Levy and Notice of Your Right to a Hearing was sent to petitioner on October 7, 2003, with an account summary showing an amount due of $3,570.80, which amount, at that time, included the assessed balance, accrued interest, and an addition to tax. Petitioner submitted her Form 12153, Request for a Collection Due Process Hearing, on or about October 21, 2003, and submitted Form 8857, Request for Innocent Spouse Relief, on or about October 23, 2003.

On February 6, 2004, the requested collection hearing with an Appeals officer was held by telephone. At the hearing, petitioner did not discuss any collection alternatives with the Appeals officer. On March 12, 2004, the Appeals officer issued a Notice of Determination Concerning Collection Action under Section 6330 informing petitioner that the decision to upon levy petitioner's property was an appropriate action. Also on March 12, 2004, the Appeals officer issued a Notice of Determination Concerning Your Request for Relief under the Equitable Relief Provision of Section 6015(f) stating that no relief under section 6015(f) would be granted because petitioner requested relief more

than 2 years after the first collection action following July 22, 1998, took place.[2]

Petitioner attempted to file with the Internal Revenue Service (IRS) Form 1040-SS, U.S. Self-Employment Tax Return,[3] for 1996 on or about March 15, 2004, showing a net loss of $435 from self-employment. Petitioner attached the Form 1040-SS as an exhibit to a Form 843, Claim for Refund and Request for Abatement, which she filed in her attempt to obtain a refund of her total tax credits of $900. Petitioner also stated at trial that she attempted to file her own 1996 tax return with her signature on it, but the return was not accepted.[4] However, this statement was made before petitioner was sworn in as a witness and, therefore, does not constitute evidence in this case. Also on or about March 15, 2004, petitioner filed Form 941c, Supporting Statement to Correct Information, as an adjustment to her Form 843 for the 1996 taxable year claiming an adjustment of $900.[5] Petitioner attached to the Form 843 a Form 1040, Schedule

---

[2] On brief, respondent conceded the issue of whether petitioner properly elected relief within the 2 years after the date the Secretary had begun collection activities in light of our decision in McGee v. Commissioner, 123 T.C. 314 (2004).

[3] The purpose of Form 1040-SS is for residents of the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and Puerto Rico to report, among other things, earnings from self-employment and pay self-employment tax.

[4] The Court assumes that petitioner meant to file a Form 1040 tax return for 1996. See supra note 3.

[5] The Court realizes that petitioner's Form 941c filed on or
(continued...)

C showing a net loss of $435 for 1996, and she also attached a Form 8863, Education Credits, Hope and Lifetime Learning Credits, purportedly for the 1996 taxable year, showing that she was entitled to tentative education credits in the amount of $240.

On March 16, 2004, petitioner filed the above-mentioned Form 843 alleging, among other things, that her former husband forged her signature on their 1996 joint tax return, that the IRS "has kept [her] rebates", and that she was not required to file a Federal tax return for 1996.  However, at trial she stated:  "In '96, that was the year that I separated from my husband, he asked me to leave, and I said I couldn't because we had lots of things to attend [to].  Number One, we had the return, and he said to leave your [papers] and I will take care of it."  Petitioner later testified:  "And, yes, I would have filed with him in '96, and you can put that on the record, too.  I loved him and I wanted our family, but in '98, I didn't want him, and he didn't pay us, and he didn't keep his promises, and he lied, and he said he was coming and he didn't come."[6]

_____

[5](...continued)
about Mar. 15, 2004, purports to correct information on Form 843 filed subsequently on Mar. 16, 2004, as discussed infra in text. The Court notes the date inconsistency.  However, the parties confirmed at trial that the total amount of the tax credits transferred by respondent to offset the underpayment in 1996 was, in fact, $900.

[6] Petitioner did not introduce any evidence that she ever notified Mr. Magee prior to the date in 1998 that Mr. Magee filed their joint income tax return for 1996 that petitioner had changed her mind and no longer wished to file a joint Federal
(continued...)

In response to respondent's March 12, 2004, determination letters, petitioner on March 31, 2004, timely filed a Petition for Lien or Levy Action Under Code Section 6320(c) or 6330(d) with this Court for the 1996 taxable year. On May 21, 2004, respondent filed an answer to petitioner's petition and a certification under Rule 325(b). See King v. Commissioner, 115 T.C. 118 (2000). The certification confirmed that respondent notified Mr. Magee that petitioner filed a claim for relief from joint and several liability and that he could intervene. Despite the notice, Mr. Magee has not intervened in this case.

OPINION

I. Contentions of the Parties

Petitioner contends that she is not required to file a Federal income tax return for 1996. Specifically, she asserts that she did not generate a sufficient amount of income to require her to file a return. In addition, with respect to the 1996 joint return, petitioner maintains that she is entitled to relief from joint and several liability because her former spouse forged her signature on the return. Ultimately, petitioner claims that she never received a notice of deficiency for 1996, that 1996 joint return was invalid, that liability on the 1996 joint return was incorrect, and that she was not given a proper

6(...continued)
income tax return for 1996.

hearing with respect to respondent's intent to levy.[7]  Petitioner also asserts that she should be entitled to recover her litigation and/or administrative costs for, among other things, her time in preparing her defense.[8]

Respondent, on the other hand, claims that petitioner earned self-employment income in 1996 and was required to file an income tax return for 1996.  Respondent does not contend that petitioner is liable for a deficiency or that an understatement exists; rather, he states that this case concerns petitioner's failure to pay her tax liability as shown on her joint return filed for 1996.  Furthermore, respondent argues that he did not abuse his discretion in determining collection action was appropriate under section 6330 or in denying relief from joint and several liability under section 6015(f).

## II.  Filing Requirement

The Code imposes a Federal tax on the taxable income of every individual.  Sec. 1.  Gross income for the purpose of calculating taxable income is defined as "all income from

---

[7]  The parties did not address sec. 7491(a), and petitioner did not argue that the burden of proof shifted to respondent under sec. 7491(a).

[8] Petitioner requested recovery of legal fees for her time in preparing for the instant case, in obtaining her divorce, and in filing her bankruptcy in March 2000.  Additionally, petitioner asks the Court for recovery for legal fees to compensate her minor child for the child's time "to protect" petitioner's rights.  Although petitioner did not specifically request litigation or administrative costs under sec. 7430, any consideration for costs under sec. 7430 would be premature, and the Court will not further discuss the issue.  See Rule 231.

whatever source derived". Sec. 61(a). Every U.S. resident individual whose gross income for the taxable year equals or exceeds the exemption amount is (with enumerated exceptions not applicable here) required to file an income tax return. Sec. 6012(a)(1)(A). Petitioner had gross income totaling at least $11,000 from receipts or sales from her newspaper delivery business for taxable year 1996.[9] The filing threshold for a taxpayer under age 65 filing a single return for taxable year 1996 was $6,550.[10] Petitioner's gross income exceeded the filing threshold for the 1996 taxable year, and petitioner was, therefore, required to file an income tax return.

III. Levy Collection Action

Section 6331(a) authorizes the Commissioner to collect any unpaid tax by levy upon all "property and rights to property" of a person liable for such tax within 10 days after notice and demand of payment for such tax. However, before a levy commences under section 6331(a), the Commissioner must give the taxpayer at least 30 days' written notice of the Commissioner's intent to make such a levy in order for any collection action to proceed.

---

[9] Petitioner stated that she had gross receipts of $11,000. The Court assumes this is a rounded amount. Per Form 1040, Schedule C, petitioner had gross income from receipts or sales of $11,032.

[10] Petitioner did not allege head of household filing status for 1996 in her Form 1040-SS; however, petitioner indicated that she had a daughter who was not yet "emancipated". In any event, the filing threshold for 1996 for head of household under 65 was $8,450 and for married filing separately was $2,550.

Sec. 6331(d). Such notice must also include a brief statement setting forth, among other things, any available administrative appeals. Sec. 6331(d)(4).

Section 6330 then establishes procedures for administrative and judicial review of collection actions by levy. Specifically, section 6330(a) requires a 30-day written notification to the taxpayer of his or her right to an administrative hearing before a levy may be made, including a statement of administrative appeals available. Section 6330(b) provides that any hearing requested by a taxpayer will be held by the IRS Office of Appeals and conducted before an impartial officer. Section 6330(c) establishes matters which can be considered at the administrative hearing:

>    (2) Issues at hearing.--
>
>       (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
>          (i) appropriate spousal defenses;
>
>          (ii) challenges to the appropriateness of collection actions; and
>
>          (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>
>       (B) Underlying liability.--The person may also raise at the hearing challenges to

the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

\*    \*    \*    \*    \*    \*    \*

Lastly, section 6330(d) permits the taxpayer to appeal a determination resulting from the hearing within 30 days to the Tax Court, or to a District Court of the United States if the Tax Court does not have jurisdiction of the underlying tax liability. Sec. 6330(d)(1).

Section 6330(c)(2)(A) allows a taxpayer to raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. Montgomery v. Commissioner, 122 T.C. 1, 5 (2004); Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). A taxpayer cannot raise issues relating to the underlying tax liability if the taxpayer received a notice of deficiency or had the opportunity to dispute the liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, supra; Goza v. Commissioner, supra. A taxpayer's "underlying tax liability" under section 6330(c)(2)(B) includes taxes determined by the taxpayer and shown due on the filed tax returns and assessed by respondent. Montgomery v. Commissioner, supra at 7-8.

Since petitioner did not receive a notice of deficiency for 1996, and did not otherwise have the opportunity to dispute her liability pursuant to section 6330(c)(2)(B), she was entitled to challenge the existence or the amount of the underlying tax liability for 1996 at her Appeals Office hearing. See id. at 8-9. Petitioner raised the allegation that her husband forged her signature on her tax return as a defense to respondent's assessment.

Where the validity of the underlying tax liability is not properly placed at issue, the Court will review the administrative determination of the Appeals Office for an abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182. However, if the validity of the underlying tax liability is properly at issue, as is the case here, the Court reviews the matter de novo. Poindexter v. Commissioner, 122 T.C. 280, 285 (2004), affd. 132 Fed. Appx. 919 (2d Cir. 2005); Sego v. Commissioner, supra at 609-610.

A lien or levy action under section 6330(d) is commenced by the filing of a petition with this Court. Rule 331(a). Rule 331(b) addresses the content of the petition. Rule 331(b)(4) and (5) requires that petitioner's pleading contain "Clear and concise assignments of each and every error which the petitioner alleges to have been committed in the notice of determination" and "Clear and concise lettered statements of the facts on which the petitioner bases each assignment of error". Petitioner must

plead her allegations of fact with sufficient specificity that the Court can conduct a meaningful hearing to determine whether respondent can proceed with collection of her liability. Poindexter v. Commissioner, supra at 285.

Petitioner's statements indicate that she disagrees with the income tax liability as shown on the joint return. However, other than claiming that the joint return contained false or fraudulent information, petitioner fails to specifically address or identify any items of income, deduction, or credit or any calculations that are incorrect. In fact, respondent has not challenged the $7,376 in Schedule C expenses claimed on the filed 1996 tax return.[11] In short, as to computational matters, petitioner has failed to aver facts or to establish facts at trial with credible evidence sufficient to show any error in respondent's assessment. Petitioner's only explicit argument contesting her underlying tax liability is her contention that

---

[11] Petitioner stated that she had gross income of $11,000 and incurred $8,000 in expenses for papers and supplies in connection with her newspaper delivery business. However, at trial, she orally listed expenses of: $7,405 for papers, $140 for an expense not mentioned, and $300 for her bond. These amounts total $7,845, none of which was substantiated by petitioner. Petitioner did not submit any evidence regarding any of her deductions, yet respondent never disallowed any of the $7,376 in expenses claimed on petitioner's Form 1040, Schedule C. It appears that petitioner attempted to file a Form 1040 because she believed she was entitled to a refund of her $900 in tax credits. She apparently thought that she only had income of approximately $3,000, was, therefore, not liable for any tax, and had no obligation to file a return. This was an erroneous belief since an individual's obligation to file a tax return depends upon on gross income, not net income. See sec. 6012(a)(1)(A); see also supra sec. II.

her husband forged her signature on their joint return.[12] The Court addresses below petitioner's contention that her signature was forged on the joint return, but the Court notes that this contention does not invalidate the joint return, and it also does not place the validity of the underlying liability at issue.

Petitioner did not pursue her opportunities to discuss collection alternatives with the Appeals officer such as a possible installment agreement, offer-in-compromise, the posting of a bond, or the substitution of other assets, and she did not submit any financial information for the Appeals officer to consider. See sec. 6330(c)(2)(A)(iii). The Appeals officer verified that the legal and procedural requirements for collection had been satisfied in her Collection Due Process Explanation of Items.

IV. Filing of a Joint Return

Section 6013 allows a husband and a wife to file a joint return. Generally, joint and several liability applies to all joint returns. Sec. 6013(d)(3). Therefore, petitioner would typically be jointly and severally liable for the payment of any taxes due on the aggregate income. See id. Where a taxpayer has consented to the filing of a joint return, such joint return may be considered valid even if only one taxpayer signs the return. Estate of Campbell v. Commissioner, 56 T.C. 1, 12-13 (1971);

---

[12] See infra sec. IV for a discussion on the validity of a joint return where only one spouse signed the return.

Douglas v. Commissioner, 27 T.C. 306, 313-314 (1956), affd. sub nom. Sullivan v. Commissioner, 256 F.2d 4 (5th Cir. 1958); Heim v. Commissioner, 27 T.C. 270, 273 (1956), affd. 251 F.2d 44 (8th Cir. 1958). Whether a husband and a wife intended to file a joint return is highly probative of whether the return qualifies as a joint return. Stone v. Commissioner, 22 T.C. 893, 900-901 (1954). A spouse's intent is a question of fact. Estate of Campbell v. Commissioner, supra at 12.

Despite petitioner's claim that Mr. Magee forged her signature on their joint return,[13] the Court construes petitioner's testimony and statement as affirming that she intended to file a joint return with Mr. Magee for 1996. Petitioner testified that she filed a separate return for 1996. In reality, petitioner belatedly filed as an attachment to her Form 843 a Form 1040-SS,[14] dated March 15, 2004, for her 1996 taxable year showing negative self-employment income in the amount of $435 and no tax due. However, petitioner's previously

---

[13] Petitioner was in the process of introducing evidence that the signature on the 1996 joint return was not her signature when respondent agreed verbally to stipulate this fact. Petitioner did not introduce any credible evidence that her agreement to file a joint Federal income tax return was acquired under duress.

[14] See supra notes 3 and 4. It appears that in 1996, petitioner intended to file a joint return with Mr. Magee. However, in 1998, after Mr. Magee failed to pay child support payments, petitioner apparently questioned her decision to file jointly with him. In 2004, after the IRS initiated collection action, petitioner attempted to file a separate return for 1996 to avoid liability for the unpaid 1996 joint tax still due and to obtain a refund of her $900 in tax credits.

filed joint return revealed that petitioner had gross receipts of $11,032 in 1996. The record does not indicate any reasons why petitioner or Mr. Magee would not elect to file a joint return and indicates that at the time they intended to do so. It was not until years later that petitioner determined she no longer wished to file jointly in light of the resulting unpaid joint tax liability and the complete breakdown of her marriage. Therefore, the Court finds that petitioner filed a joint return with Mr. Magee.

## V.   Relief Under Section 6015

In certain situations, a joint return filer can avoid joint and several liability by seeking relief under section 6015.[15] Generally, a joint filer can seek relief under three alternatives:  (1) Full or partial relief under section 6015(b); (2) proportionate relief under section 6015(c); and (3) equitable relief under section 6015(f).

### A. Introduction

In relevant part, section 6015(a) provides:

> SEC. 6015(a). In General.--Notwithstanding section 6013(d)(3)--
>
> (1) an individual who has made a joint return may elect to seek relief under the procedures prescribed under subsection (b); and

---

[15] Section 6015 applies to any tax liability arising after July 22, 1998, and to any tax liability arising before 1998, but remaining unpaid as of that date, as in the instant case. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 734.

> (2) if such individual is eligible to elect the application of subsection (c), such individual may, in addition to any election under paragraph (1), elect to limit such individual's liability for any deficiency with respect to such joint return in the manner prescribed under subsection (c).

Where relief is not available under section 6015(b) or (c), section 6015(f) provides an additional alternative for relief from joint and several liability, at the discretion of the Secretary, if it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency. Rev. Proc. 2003-61, 2003-2 C.B. 296.

B.    Relief Under Section 6015(b) and (c)

Relief under section 6015(b) or (c) is premised on the existence of a deficiency. Sec. 6015(b)(1)(B) and (c)(1); Block v. Commissioner, 120 T.C. 62, 65-66 (2003). Since this case does not involve a deficiency or an understatement, relief under section 6015(b)(1) or (c) is not available.

C.    Relief Under Section 6015(f)

The Tax Court has jurisdiction to review a denial of equitable relief. Fernandez v. Commissioner, 114 T.C. 324, 328-330 (2000). The Tax Court reviews respondent's denial of relief to determine whether respondent's determination was arbitrary, capricious, clearly unlawful, or without sound basis in law or fact. Ewing v. Commissioner, 122 T.C. 32, 39 (2004).

Where relief is not available under section 6015(b) or (c), petitioner may be entitled to relief if it would be "inequitable

to hold the individual liable for any unpaid tax".  Sec.

6015(f)(1).  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297[16]

lists seven threshold conditions that petitioner must satisfy in

order for respondent to consider a request for relief under

section 6015(f).  The threshold conditions are as follows:

> (1) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief.
> (2) Relief is not available to the requesting spouse under section 6015(b) or (c).
> (3) The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse * * *.
> (4) No assets were transferred between the spouses as part of a fraudulent scheme by the spouses.
> (5) The nonrequesting spouse did not transfer disqualified assets to the requesting spouse.* * *
> (6) The requesting spouse did not file or fail to file the return with fraudulent intent.
> (7) The income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return (the "nonrequesting spouse"), unless one of the following exceptions applies:[17]
>> (a) Attribution solely due to the operation of community property law. * * *
>> (b) Nominal ownership. * * *
>> (c) Misappropriation of funds. * * *
>> (d) Abuse not amounting to duress. * * *

---

[16] Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447. Rev. Proc. 2003-61, supra, and is effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending as of Nov. 1, 2003, for which no preliminary determination letter had been issued as of Nov. 1, 2003.  The record does not indicate that respondent issued petitioner a preliminary determination letter on or before Nov. 1, 2003; therefore, Rev. Proc. 2003-61 applies in this case.

[17] Petitioner and Mr. Magee's 1996 joint tax return reflects estimated taxes paid by Mr. Magee.  However, this amount was not sufficient to cover all of his tax liability, much less any of petitioner's tax liability.

Respondent did not contest that petitioner met these seven threshold conditions.

Once petitioner has satisfied the threshold conditions, Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298,[18] then provides a "nonexclusive list of factors" that the Commissioner "will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid income tax liability". No single factor will determine whether equitable relief will be granted in any particular case, and the Commissioner will consider and weigh all relevant factors regardless of whether or not the factor is listed in Rev. Proc. 2003-61, sec. 4.03. Rev. Proc. 2003-61, sec. 4.03(2)(a) provides the following factors that may be relevant to whether the Commissioner will grant equitable relief: (1) Marital status, (2) economic hardship, (3) knowledge or reason to know that the nonrequesting spouse would not pay the liability, (4) the nonrequesting spouse's legal obligation, (5) significant benefit, (6) compliance with income tax laws, (7) abuse, and (8) mental or physical health. Certain factors, specifically abuse or mental or physical health, will weigh in favor of granting equitable relief; however, they will not weigh against equitable relief if

---

[18] Rev. Proc. 2003-61, sec. 4.03 applies to a spouse who meets the conditions of sec. 4.01, but not sec. 4.02.

they are not found present in a case.  Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299.

### 1.   Marital Status

Whether the requesting spouse is separated or divorced from the nonrequesting spouse is a factor in favor of granting relief to the requesting spouse.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(i).  Petitioner was divorced from Mr. Magee at the time she sought relief.  This factor weighs in favor of granting equitable relief.

### 2.   Economic Hardship

If payment of the tax liability would cause the requesting spouse to suffer economic hardship, this factor would support the granting of equitable relief to the requesting spouse.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii).  Economic hardship "applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses.  The determination of a reasonable amount for basic living expenses will be made by the director and will vary according to the unique circumstances of the individual taxpayer."  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.

In determining a reasonable amount for basic living expenses, the Commissioner will consider any information provided by the taxpayer including, inter alia:  (1) The taxpayer's age, employment, status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food,

clothing, housing, medical expenses, transportation, current tax payments, alimony, child support, or other court-ordered payments and expenses necessary to the taxpayer's production of income; (3) cost of living in the geographic area where the taxpayer resides; (4) the amount of property exempt from the levy which is available to pay the taxpayer's expenses; (5) any extraordinary circumstances; and (6) any other factor that the taxpayer claims bears on economic hardship. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Petitioner supports her daughter and stated that she was providing her with lessons[19] and 2 years of orthodontic work. Petitioner also asserted that she was in Chapter 7 bankruptcy for 5 months because Mr. Magee left her with medical bills and has not made required child support payments. Although the Court believes that petitioner honestly suffered a financial hardship resulting from Mr. Magee's failure to pay child support, she did not provide this Court with any supporting financial records. While petitioner credibly testified as to her generalized expenses, she did not provide any specific evidence regarding her income; the amount necessary for food, clothing, housing, medical expenses, transportation for petitioner and her daughter, or expenses necessary for petitioner's production of income; or any evidence regarding her net worth. Absent evidence regarding

---

[19] The record does not indicate the type of "lessons" to which petitioner refers.

petitioner's basic living expenses, income, and net worth, petitioner has not demonstrated that she would suffer an economic hardship if she were denied relief from joint and several liability. This factor weighs to some degree in favor of denying equitable relief.

### 3. Knowledge or Reason To Know

In a situation where a liability has not been paid and the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the liability, this factor would weigh in favor of granting relief. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii). When petitioner and Mr. Magee separated, petitioner stated that she left all her tax information and records with Mr. Magee for him to file their joint return. Petitioner was thus aware of the need to file the return, but she did not participate in the preparation of the joint return. In 1996, petitioner was self-employed as a newspaper carrier and did not make any estimated tax payments, nor did she have any tax withheld for 1996.

Since petitioner and her then husband had a tax liability resulting from his and her earned income, and petitioner did not have any withholding or pay any estimated taxes for 1996, petitioner knew or should have known that she could owe tax on the joint return for at least her portion of the earned income. While she testified that she did not think any tax would be due, that assumption was not justified. Petitioner did not offer any

evidence demonstrating that it was reasonable for her to believe that Mr. Magee would pay any unpaid tax liability. We are not persuaded that petitioner lacked knowledge or reason to know that any unpaid tax liability for 1996 would not be paid by Mr. Magee. This factor weighs in favor of denying equitable relief.

### 4. Nonrequesting Spouse's Legal Obligation

This is a factor in favor of the requesting spouse where the nonrequesting spouse has a legal obligation pursuant to a divorce decree or an agreement to pay the outstanding tax liability, and the requesting spouse did not know or did not have any reason to know that the nonrequesting spouse would not pay the income tax liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi).

Petitioner offered Form FSA - 200, Child Support Enforcement Transmittal, showing that Mr. Magee's location could not be determined as of April 4, 2001. Petitioner also testified that Mr. Magee's driver license was revoked, that any IRS refunds to which Mr. Magee would be entitled would be levied for the support of their child, and that a bench warrant for Mr. Magee had been issued. The Court found petitioner's testimony regarding Mr. Magee's obligation to provide child support payments to be credible and sincere. However, petitioner did not establish that Mr. Magee was under an obligation to pay the tax debt pursuant to a divorce decree or other agreement. This is a neutral factor.

### 5.  Significant Benefit

Where the requesting spouse significantly benefited (beyond normal support) from the unpaid liability, this is a factor against granting relief to the nonrequesting spouse.  Petitioner and Mr. Magee had income in the amounts of $11,032 and $30,805, respectively, for 1996, as shown on their joint return.  Mr. Magee made estimated tax payments; petitioner did not.  Petitioner's gross income constituted about 25 percent of the total income, and her net income was even less.  There is nothing in the record regarding petitioner and Mr. Magee's lifestyle or spending habits when they were married.  It appears that petitioner did not receive a significant benefit from the filing of the joint return.  This factor weighs in favor of granting relief.

### 6.  Abuse

There is no evidence in the record that petitioner suffered any physical abuse from Mr. Magee.  This is a neutral factor.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i).

### 7.  Mental or Physical Health

There is no evidence in the record that petitioner's mental or physical health was poor.  This is a neutral factor.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii).

All factors weighed and considered, the Court finds that it would not be inequitable under section 6015(f) to hold petitioner liable for the 1996 unpaid tax.

VI.  Conclusion

The Court found the testimony of petitioner to be sincere. It appears from the record that when petitioner and Mr. Magee divorced, he left petitioner and their child with scant financial resources and significant debt.  However, since petitioner intended to file a joint return with Mr. Magee, she should have been aware that each joint filer would be jointly and severally liable for any tax shown due on the return.  The Court is sympathetic to petitioner's case; nevertheless, on this record, the Court concludes that respondent's denial of equitable relief was appropriate.  Therefore, petitioner is not entitled to relief under section 6015(f) and is liable for the amount shown due on the tax return.  Accordingly, collection action by levy of petitioner's unpaid 1996 tax liability as reflected in the notice of determination may proceed.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

for respondent.