T.C. Summary Opinion 2010-93


UNITED STATES TAX COURT


PATRICIA A. NICOLETTI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14384-05S.              Filed July 14, 2010.


Patricia A. Nicoletti, pro se.

<u>Steven W. LaBounty</u>, for respondent.


CARLUZZO, <u>Special Trial Judge</u>:  This section 6015(e)[1] case
was heard pursuant to the provisions of section 7463.  Pursuant
to section 7463(b), the decision to be entered is not reviewable
by any other court, and this opinion shall not be treated as
precedent for any other case.

---

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.

In a final notice of determination dated June 9, 2005, respondent denied petitioner's claim for section 6015 relief with respect to the joint and several liability arising from the 1996 and 2001 joint Federal income tax returns she filed with Michael Nicoletti (her former spouse). Because the liability for each year results from an underpayment of the tax shown on the joint return, she does not qualify for relief under section 6015(b) or (c) for either year. That being so, we consider her entitlement to equitable relief under section 6015(f).

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner resided in Missouri.

Petitioner and her former spouse were married in March 1985. They separated in January 2003 and were divorced in April 2004 pursuant to a "Judgment of Dissolution of Marriage" (the judgment). Unpaid Federal income tax liabilities for various years are noted in the judgment, but responsibility for the payment of those liabilities is not addressed. As relevant here and among other things, the judgment obligated petitioner and her former spouse to sell the marital residence and divide equally the net proceeds from the sale.

Although both were obligated to do so, neither petitioner nor her former spouse filed a Federal income tax return for 1988, 1989, 1990, 1991, 1992, or 1993. According to petitioner, during the course of her marriage she routinely provided her tax information to her former spouse expecting that he would prepare and file a Federal income tax return for each of those years. She never asked him, however, whether any of the returns had, in fact, been filed. Ultimately and in accordance with an agreement or agreements with respondent, income tax assessments were made against petitioner and her former spouse for each of those years. Among other of her liabilities, unpaid liabilities resulting from those assessments were discharged on February 10, 2004, in a bankruptcy proceeding she initiated on October 31, 2003. Several months after the discharge, on July 7, 2004, the marital residence was sold. Petitioner's share of the net proceeds totaled $46,588.24.

The 2001 joint Federal income tax return of petitioner and her former spouse was filed on April 15, 2002. That return shows an income tax liability of $5,718 and an estimated tax penalty of $74. Taking into account withholding credits, the return shows $2,506 of tax due, $1,200 of which was paid with the return.

The 1996 joint Federal income tax return of petitioner and her former spouse was filed on April 15, 2003, several months before petitioner initiated the above-referenced bankruptcy

proceeding. That return shows a $3,068 income tax liability and a $79 estimated tax penalty. Taking into account withholding credits, the return shows $1,727 of tax due, none of which was paid with the return.

Petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief (request for relief), on March 29, 2004, and a Form 12510, Questionnaire for Requesting Spouse (questionnaire), on May 14, 2004. In those documents petitioner describes her financial situation and strongly suggests that it would be a hardship if she were held responsible for the outstanding tax liabilities for 1996 and 2001. On her questionnaire she noted that it was her belief that her former spouse would pay those liabilities.

In the final notice of determination respondent denied petitioner's request for relief on the ground that she failed to establish a reasonable belief that her former spouse would pay the unpaid tax liabilities.

## Discussion

In general, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election for a year, each spouse is jointly and severally liable for the entire Federal income tax liability assessed for that year, whether as reported on the joint return or subsequently determined to be due. Sec. 6013(d)(3); see sec. 1.6013-4(b),

Income Tax Regs.  Subject to various conditions and in a variety of ways set forth in section 6015, an individual who has made a joint return with his or her spouse for a year may elect to seek relief from the joint and several liability arising from that joint return.

A taxpayer who does not qualify for relief under section 6015(b) or (c), as is the situation here, may be relieved from joint and several liability pursuant to section 6015(f) if, taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency.

We review de novo petitioner's entitlement to relief under section 6015(f).  See Porter v. Commissioner, 132 T.C. 203 (2009).

The Commissioner has issued revenue procedures listing factors normally considered in determining whether relief should be granted under section 6015(f).  Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.[2]

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth threshold conditions that individuals seeking relief under

---

[2]The guidelines set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296, are effective for requests for relief filed, as in this case, on or after Nov. 1, 2003.  Id. sec. 7, 2003-2 C.B. at 299.

section 6015(f) must satisfy.  Respondent concedes that petitioner satisfies the threshold conditions.

If the requesting spouse satisfies the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, then Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth circumstances in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability.

To qualify for relief under Rev. Proc. 2003-61, sec. 4.02(1), 2003-2 C.B. at 298, the spouse seeking relief must:  (1) No longer be married to, be legally separated from, or not have been a member of the same household of the other spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when the spouse seeking relief signed the return that the other spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.  The parties dispute whether:  (1) Petitioner had knowledge or reason to know that her former spouse would not pay the tax liabilities; and (2) whether she would suffer economic hardship if her request for relief were not granted.

To satisfy the second requirement, the requesting spouse must establish that:  (1) When the return was signed, the requesting spouse had no knowledge or reason to know that the tax reported on the return would not be paid; and (2) it was

reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the tax shown due. Morello v. Commissioner, T.C. Memo. 2004-181; Ogonoski v. Commissioner, T.C. Memo. 2004-52; Collier v. Commissioner, T.C. Memo. 2002-144.

According to petitioner, she did not know, or have reason to know that the unpaid tax shown to be due on each return would not be paid by her former spouse. She argues that respondent erred by concluding otherwise. With respect to 1996, petitioner's cursory trial testimony that she "just thought he was paying it" without providing the basis for her "thinking" tells us little about the reasonableness of her expectation. For 2001 petitioner points out that one-half of the amount of tax shown due on the return was paid by her former spouse at the time the return was filed. She reasoned that "if [her former spouse] wasn't going to pay * * * [the entire amount shown to be due on the return], he wouldn't have paid any of it." Although no doubt apparent to her, logic on the point has been lost on us.

According to respondent, at the time petitioner signed each return, she knew, or should have known that the tax shown due on each return would not be paid by her former spouse. Respondent supports this position by pointing out that at the time she signed the returns: (1) Petitioner and her former spouse jointly owed Federal income taxes for 1988, 1989, 1990, 1991, 1992, 1993, and 1994; and (2) petitioner was aware that her former spouse

routinely did not satisfy his Federal income tax obligations with respect to income earned from his business.

The record demonstrates that at the time petitioner signed the 1996 and 2001 returns she was aware of the outstanding Federal income tax liabilities for the above-referenced set of years. She was likewise aware that her former spouse was routinely and repeatedly derelict in satisfying his Federal income tax obligations. Furthermore, as she noted in the questionnaire, at the time she signed the returns financial problems made it difficult to pay monthly expenses. As we view the matter, if she was not aware that the unpaid liabilities shown on the 1996 and 2001 returns would not be paid by her former spouse, she surely should have been. It follows that petitioner is not entitled to relief under Rev. Proc. 2003-61, sec. 4.02.

If, as here, a spouse fails to qualify under Rev. Proc. 2003-61, sec. 4.02, then relief may be granted under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. A nonexhaustive list of factors routinely considered when determining whether to grant equitable relief under section 6015(f) is contained in Rev. Proc. 2003-61, sec. 4.03. Those factors are: (1) Marital status; (2) economic hardship; (3) whether the spouse seeking relief knew or had reason to know that the other spouse would not pay the income tax liability; (4) the other spouse's legal obligation to pay the

tax liability; (5) whether the spouse seeking relief obtained a significant benefit from the nonpayment of the tax liability; and (6) whether the spouse seeking relief complied with Federal income tax laws. Other factors that may be considered, but will not weigh against relief if not present, are: (1) Whether the nonrequesting spouse abused the requesting spouse; and (2) whether the requesting spouse was in poor mental or physical health at the time he or she signed the tax return or at the time he or she requested relief. Id. sec. 4.03(2)(b), 2003-2 C.B. at 299.

No single factor is determinative; all factors are to be considered and weighed appropriately, Haigh v. Commissioner, T.C. Memo. 2009-140, and we do so in the following paragraphs.

1. Marital Status

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief is separated or divorced from his or her spouse. Petitioner and her former spouse separated in January 2003 and divorced in April 2004. Petitioner filed her claim for relief on March 29, 2004. The marital status factor favors relief.

2. Economic Hardship

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief would be unable to pay reasonable basic living expenses if

relief is not granted. <u>Butner v. Commissioner</u>, T.C. Memo. 2007-136.

As set forth in section 301.6343-1(b)(4), Proced. & Admin. Regs., the following nonexclusive factors may be considered in determining whether the spouse seeking relief can pay reasonable basic living expenses: (1) The age, employment status and history, ability to earn, and number of dependents of the spouse seeking relief; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, and expenses necessary to the production of income for the spouse seeking relief; (3) the cost of living in the geographic area of the spouse seeking relief; (4) the amount of property available to satisfy the expenses of the spouse seeking relief; (5) any extraordinary circumstances (e.g., special education expenses, a medical catastrophe, or a natural disaster); and (6) any other factor bearing on economic hardship.

The most recent financial information available as of the date of trial shows that petitioner's monthly income exceeds her monthly expenses. Furthermore, the sale of the marital residence netted her $46,588.24, a portion of which could be used to satisfy her 1996 and 2001 income tax liabilities, and the discharges granted in the above-referenced bankruptcy proceeding eliminated many of her other financial obligations. Denying petitioner's request for relief from her 1996 and 2001 income tax

liabilities will not intrude upon her ability to satisfy her reasonable basic living expenses.  This factor weighs against relief.

3.  Knowledge or Reason To Know

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii), 2003-2 C.B. at 298, consideration is given to whether the spouse seeking relief knew or had reason to know that the other spouse would not pay the liability.  As previously discussed, petitioner has failed to establish that at the times the 1996 and 2001 returns were signed, she had a reasonable belief that the taxes would be paid.  This factor weighs against relief.

4.  Legal Obligation of Other Spouse

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298, consideration is given to whether the other spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or an agreement.  The judgment is silent with regard to whether petitioner or her former spouse is responsible for the 1996 and 2001 income tax liabilities. Accordingly, this factor is neutral.  See Washington v. Commissioner, 120 T.C. 137, 148-149 (2003).

5.  Significant Benefit

Under Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299, consideration is given to whether the spouse seeking relief significantly benefited (beyond normal support) from the unpaid

income tax liability. If so, the significant benefit factor weighs against granting equitable relief. Petitioner received no significant benefit from the unpaid tax, other than normal support. Therefore, this factor weighs in favor of relief. See Magee v. Commissioner, T.C. Memo. 2005-263 (lack of significant benefit weighs in favor of relief under Rev. Proc. 2003-61, supra); cf. Butner v. Commissioner, supra (lack of significant benefit weighed in favor of relief under former section 6013(e) notwithstanding that Rev. Proc. 2000-15, supra, states that it is neutral).

6. Petitioner's Compliance With Federal Income Tax Laws

In the tax years following the years to which the request for relief relates petitioner was in compliance with her Federal income tax obligations. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299. This factor favors relief.

7. Abuse

Under Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), consideration is given to whether the nonrequesting spouse abused the requesting spouse. The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the requesting spouse's knowledge or reason to know. Id. Abuse is not limited to physical abuse and may include verbal and mental abuse. Nihiser v. Commissioner, T.C. Memo. 2008-135.

Petitioner's evidence on this point consists of her statement made on the questionnaire that she had been a victim of "verbal abuse".  Without more information we are not persuaded that the "verbal abuse" was the type of abuse referenced in Rev. Proc. 2003-61, sec. 4.03(2)(b)(i).  See <u>Collier v. Commissioner</u>, T.C. Memo. 2002-144.  This factor is neutral.

8.  <u>Mental or Physical Health</u>

Petitioner has not alleged, nor does the record show, that her mental or physical health was poor at the relevant times. Therefore, this factor is neutral.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii).

As noted, no factor is determinative, and here, as in other section 6015(f) cases, some factors favor relief, some factors do not, and others are neutral.  Application of the knowledge and hardship factors strongly suggests that petitioner's request for section 6015(f) relief should be denied; all relevant factors considered together do not suggest otherwise.  Petitioner has failed to establish that it would be inequitable to hold her liable for the unpaid portions of her 1996 and 2001 Federal income tax liabilities.  Respondent's denial of her request for such relief is sustained.

At trial petitioner requested that the Court, in lieu of granting section 6015(f) relief, at least abate the interest that has accrued and is accruing on the liabilities here under

consideration.  In closing we think it appropriate to briefly comment on her request.

Ignoring any procedural defects with respect to the timing of her request and the manner in which it was made, we note that in cases such as this we are without jurisdiction to consider it.[3]  To the extent she is entitled to any such relief, see, e.g., sec. 6404, that relief is beyond our reach.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[3]As we have noted in opinions too numerous to cite, the Tax Court is a court of limited jurisdiction, and we acquire subject matter jurisdiction only to the extent authorized by Congress.