T.C. Summary Opinion 2011-49


UNITED STATES TAX COURT


STACEY LYNN CODY, Petitioner, AND MICHAEL PATRICK CODY,
Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11048-09S.                 Filed April 12, 2011.


<u>Jamie A. Rozzi</u> and <u>Adam C. Losey</u>, for petitioner.

Michael Patrick Cody, pro se.

<u>Christopher A. Pavilonis</u>, for respondent.


    PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.[1]  Pursuant to

    [1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This proceeding was commenced under section 6015(e) for review of respondent's determination that petitioner is not entitled to relief from joint and several liability with respect to underpayments of Federal income tax reported on joint Federal income tax returns filed for 2002, 2003, 2004, and 2005.

## Background

Petitioner and intervenor were married in 1995. Together they have three children. Petitioner sustained back injuries and permanent nerve damage from an automobile accident in 1998. She has been disabled since the accident and unable to work. Petitioner has suffered from chronic pain that has become more severe since the injuries sustained in 1998. Petitioner received $200,000 in settlement of her claim for damages resulting from the accident.[2] Intervenor was a self-employed mortgage broker and received commissions from F&S Mortgage Corp. and Avalar Florida Real Estate during the years at issue. While the economy and real estate market were on the rise, intervenor was able to

---

[2]Petitioner received approximately $140,000 of the settlement proceeds after attorney's fees. No evidence was presented as to the date of receipt of the funds. Petitioner credibly testified that the proceeds from the settlement were fully expended to purchase the marital home, for family necessities, and on trips taken by intervenor.

earn sufficient income to meet the family's needs.  Petitioner and intervenor shared a joint checking account into which petitioner's Social Security checks[3] and intervenor's business income were deposited.  Petitioner had access to the checking account and routinely wrote checks from the account for household expenses.

Petitioner and intervenor's marriage was not stable.  Petitioner moved out of the marital home with the children on more than one occasion.  After each departure petitioner and the children returned to the marital home.  At some point during the marriage intervenor was charged with misdemeanor domestic assault.[4]  Near the end of the marriage petitioner and intervenor began to experience financial difficulty.  Petitioner became aware that the amount of intervenor's income was decreasing.  They received foreclosure documents for the marital home dated October 26, 2007.  On November 18, 2007, petitioner permanently separated from intervenor.  Petitioner and intervenor eventually divorced on September 17, 2008.

---

[3]Petitioner's checks were referred to only as Social Security checks.  The Court assumes that petitioner's checks were Social Security disability checks.

[4]A document stating the charge and listing intervenor as the defendant was entered into evidence.  There was no date on the document.

Petitioner and intervenor's divorce was conducted through mediation. As a result of the mediation petitioner and intervenor agreed to each be responsible for 50 percent of any joint tax liability. Also, intervenor agreed to pay petitioner a lump sum of $7,000 for child support, with a continuing monthly obligation.[5] There was no amount designated for alimony.

As of the time of trial, petitioner, as the custodial parent, supported herself and the three children on her Social Security income. Petitioner received $916 a month for herself and $152 a month for each child. Petitioner's expenses exceeded her income by approximately $800 a month. When petitioner ran out of money each month, she visited a food bank to provide meals for her children.

At the time of trial intervenor was in arrears on child support payments. He had not paid the $7,000 ordered by the final judgment of divorce and was behind approximately a payment and a half on his monthly obligations.

Petitioner and intervenor initially did not file Federal income tax returns for the years 2002, 2003, 2004, and 2005. Respondent prepared substitutes for returns (SFRs)[6] for each of

---

[5]The agreed amount of intervenor's monthly child support obligation is between $800 and $1,000.

[6]The Commissioner shall make returns from his own knowledge or other information for any individual who fails to make any return required by any internal revenue law or regulation. See
(continued...)

the tax years at issue for intervenor, and intervenor was sent a notice of deficiency. Intervenor did not respond to the notice, and taxes and additions to tax of $370, $5,242, $13,959, and $11,517 for 2002 through 2005, respectively, were assessed against intervenor.[7]

After the assessments, intervenor prepared joint Federal income tax returns for all of the years at issue. Intervenor contacted petitioner and asked that she execute those joint returns. Because she was afraid to meet intervenor alone, petitioner, accompanied by her adult niece, met with intervenor in a parking lot to sign the returns. Petitioner signed the returns without reviewing them on November 26, 2007. The returns reported tax liabilities due of $332, $2,713, $9,793, and $6,927 for 2002 through 2005, respectively.

On November 27, 2007, intervenor filed for chapter 13 bankruptcy. Petitioner was aware of intervenor's plans to file for bankruptcy. Respondent received the signed joint returns on December 6, 2007. No remittance accompanied the joint returns.

Respondent accepted the joint returns as filed by petitioner and intervenor, assessed the joint tax liabilities from those returns, and abated the assessments against intervenor that were

---

[6](...continued)
sec. 6020(b).

[7]All amounts are rounded to the nearest dollar.

based upon the SFRs.  The assessments from the joint returns remain unpaid.

Petitioner filed Form 8857, Request for Innocent Spouse Relief, in August 2008 for all of the tax years at issue. Petitioner's stated reasons for requesting relief included economic hardship, spousal abuse, and mental or physical health problems.  Petitioner's initial request for innocent spouse relief was denied in November 2008, and petitioner had a telephone conference with the Appeals Office in February 2009 to discuss whether she qualified for innocent spouse relief.  The Appeals Office determined that petitioner was ineligible for innocent spouse relief.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return.  Sec. 6013(a).  After making the election, each spouse is jointly and severally liable for the entire tax due for that year.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).  In certain circumstances, however, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015.  Sec. 6015(a).

Under section 6015(a) a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section

6015(c).  If a taxpayer does not qualify for relief under either section 6015(b) or (c),[8] the taxpayer may seek equitable relief under section 6015(f).  The Secretary has discretion to grant equitable relief to a spouse who filed a joint return with an unpaid liability or to one who has a deficiency (or any portion of either).  Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.  Petitioner's petition for innocent spouse relief is a "stand alone" petition under section 6015(e) because she did not receive a statutory notice of deficiency for the years at issue.

Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 (innocent spouse) relief.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  Both the scope and standard of our review in cases requesting equitable relief from joint and several income tax liability are de novo.  Porter v. Commissioner, 132 T.C. 203 (2009).

As directed by section 6015(f), the Commissioner has prescribed procedures for determining whether a spouse qualifies for relief under that subsection.  The applicable provision is found in Rev. Proc. 2003-61, 2003-2 C.B. 296.

---

[8]Petitioner is not entitled to relief under sec. 6015(b) or (c) because she has underpayments of tax.

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth threshold requirements the Commissioner will consider before granting a request for relief under section 6015(f). All requesting spouses must meet seven threshold requirements: (1) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the requesting spouse applies for relief no later than 2 years after the date of the Internal Revenue Service's (IRS) first collection activity after July 22, 1998, with respect to the requesting spouse; (4) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not file or fail to file the return with fraudulent intent; and (7) absent enumerated exceptions, the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return. Id.

This Court employs those factors when reviewing the Commissioner's denial. Washington v. Commissioner, 120 T.C. 137, 147-152 (2003); see also Schultz v. Commissioner, T.C. Memo. 2010-233. We find, as did respondent during the Appeals process, that petitioner satisfies the seven threshold requirements for innocent spouse relief.

Where the requesting spouse satisfies the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, then Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth circumstances in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability. If the requesting spouse can prove that he or she was no longer married to or legally separated from the nonrequesting spouse on the date of the request for relief, had no knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability, and will suffer economic hardship, relief will ordinarily be granted. Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298. As we will discuss below, petitioner had knowledge or reason to know that intervenor would not pay the income tax liability and is therefore not eligible for relief under Rev. Proc. 2003-61, sec. 4.02.

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. The Court's analysis with respect to the nonexhaustive list of factors in Rev. Proc. 2003-61, sec. 4.03, is discussed below.

## I.   Marital Status

The IRS will take into consideration whether the requesting spouse is divorced or separated (whether legally separated or living apart) from the nonrequesting spouse.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.  We look to petitioner's marital status at the time of trial in applying de novo review. See Wilson v. Commissioner, T.C. Memo. 2010-134.  At the time of trial petitioner was divorced.  This factor weighs in favor of relief.  See id.; see also McKnight v. Commissioner, T.C. Memo. 2006-155 (divorce weighs in favor of relief under Rev. Proc. 2003-61).

## II.   Economic Hardship

The IRS will take into consideration whether the requesting spouse will suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298. Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses.  Butner v. Commissioner, T.C. Memo. 2007-136.  To determine economic hardship, the IRS will use the factors provided in section 301.6343-1(b)(4), Proced. & Admin. Regs.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii) (citing Rev. Proc. 2003-61, sec. 4.02(1)(c)).  The pertinent factors here are:  (1) Petitioner's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for

food, clothing, housing (including utilities, homeowner's insurance, homeowner's association dues, and the like), medical expenses (including health insurance), transportation, and current tax payments (including Federal, State, and local); (3) the cost of living in the geographic area in which petitioner resides; and (4) any other factor that petitioner claims bears on economic hardship. See sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Petitioner is disabled and has not worked since her automobile accident in 1998. At the time of trial petitioner had custody of her three children. Petitioner's income, including child support, is approximately $800 below the national and local standards for expenses. See Internal Revenue Manual pt. 5.15.1.8, 5.15.1.9., Exhibit 5.15.1-2 (Oct. 2, 2009). Intervenor was behind on child support by one and one-half payments, reducing petitioner's income by approximately $1,350 for those months. Given petitioner's disability and financial standing at the time of trial, we find that the factor of economic hardship weighs in favor of granting relief.

III. Knowledge or Reason To Know

In an underpayment case, the pertinent question is whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the income tax liability. Merendino v. Commissioner, T.C. Memo. 2006-2 (typically, in the

case of a reported but unpaid tax liability, the relevant knowledge is that the tax would not be paid when the return was signed); Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298. In determining whether the requesting spouse had reason to know, the following factors are used: (1) The requesting spouse's level of education, (2) any deceit or evasiveness of the nonrequesting spouse, (3) the requesting spouse's degree of involvement in the activity generating the income tax liability, (4) the requesting spouse's involvement in business and household financial matters, (5) the requesting spouse's business or financial expertise, and (6) any lavish or unusual expenditures compared with past spending levels. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(C), 2003-2 C.B. at 298. A taxpayer who signs a return is generally charged with constructive knowledge of its contents. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.

Petitioner has some college education, though she is not trained in finance, business, or taxation. Petitioner testified that although she does not have any technical education in taxation, she is aware that taxes have to be paid on income.[9]

---

[9]No evidence was presented that intervenor was explicitly deceitful or evasive about the returns or the tax liability. The Court notes that intervenor's explanation to petitioner was that the returns had to be signed to keep the marital home out of foreclosure and that the couple met in a parking lot to sign the returns.

Petitioner was not involved with intervenor's business activities that created the tax liabilities, but she was involved in the couple's household financial matters because she paid the couple's bills from their joint checking account. Petitioner did not have any lavish or unusual expenditures.

Petitioner argues that she was unaware that the couple had any tax liabilities for the years at issue. Petitioner was aware of a decline in the household's income, as the real estate market had weakened and intervenor brought home less and less income. Petitioner was aware that the marital home was in foreclosure because she and intervenor could not make the mortgage payments. We note that petitioner was aware when she signed the returns of intervenor's plan to file for bankruptcy. Petitioner also signed the returns without reviewing them. See id.

Given petitioner's understanding of intervenor's financial and employment situation, her knowledge that the marital home was in foreclosure, and her lack of review of the returns before signing them, the Court concludes that petitioner knew or had reason to know that the tax liabilities would not be paid when

the returns were filed.[10]  This factor weighs against granting relief.

## IV.  Nonrequesting Spouse's Legal Obligation

The IRS will also consider whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298.  After the joint returns were signed and filed with the IRS, petitioner and intervenor each agreed, as part of the divorce mediation, to be liable for 50 percent of any tax liability.  Thus it is clear that intervenor had a legal obligation to pay at least one-half of the outstanding Federal income tax liabilities.  This factor (the nonrequesting spouse's legal obligation) will not weigh in favor of relief if the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the tax liability.  Id.  We have found that petitioner knew or had reason to know that intervenor would not pay the tax liabilities.  In our discussion supra we reviewed the facts and circumstances that led us to this conclusion.  Our conclusion holds.  Accordingly, this factor weighs against granting relief.

---

[10]Although we find below that petitioner was abused by intervenor, there was not enough evidence presented for the Court to find there was a history of abuse to mitigate petitioner's knowledge or reason to know that intervenor would not pay the tax liabilities.  See Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. 296, 299.

V.   Significant Benefit

The IRS will consider whether the requesting spouse received significant benefit beyond normal support as a result of the unpaid tax liability.  Id., sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.

Respondent has not argued and there is no evidence indicating that petitioner received a significant benefit as a result of the unpaid liabilities.  Therefore, the Court concludes that this factor weighs in favor of relief.  See Magee v. Commissioner, T.C. Memo. 2005-263 (lack of significant benefit weighs in favor of relief under Rev. Proc. 2003-61).

VI.   Compliance With Federal Tax Laws

The IRS will take into consideration whether the requesting spouse has made a good-faith effort to comply with the Federal tax laws in the succeeding years.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.  Petitioner has filed all required Federal income tax returns since her separation and divorce from intervenor.

We conclude petitioner has made a good-faith attempt to comply with Federal tax laws.  This factor weighs in favor of granting relief.

VII.  Abuse and Mental or Physical Health

Abuse and mental or physical health are factors that, if present, will weigh in favor of relief but will not weigh against

relief if not present.  See id., sec. 4.03(2)(b), 2003-2 C.B. at 299.  When examining the requesting spouse's mental or physical health at the time of the signing of the returns or the request for relief, the nature, extent, and duration of his or her illness will be taken into account.  Id.

A.  Abuse

In seeking relief petitioner claimed on her Form 8857 that she had been abused.  Petitioner and Ms. Sweet, petitioner's mother, testified that intervenor abused both petitioner and the couple's son.  Intervenor denied all allegations of abuse.  Mr. Nurnberger, intervenor's employer, testified that he had known intervenor and petitioner since 1991, had been in social situations with them, and had never seen intervenor be abusive towards any of intervenor's family members.  While the testimony of the witnesses does little more than present contradictory viewpoints, two facts seem to rise above the fray.

The first is that petitioner was afraid to meet intervenor alone when it came time to sign the returns.  Petitioner asked her adult niece to accompany her on that errand.  The second is that there is one documented charge of misdemeanor domestic assault against intervenor.

We find that there was evidence of abuse against petitioner. This factor weighs in favor of granting relief.

B.    Mental or Physical Health

Petitioner presented evidence that she suffered from depression and anxiety and that she had prescription medication for treatment of her mental health.  We have no reason to question petitioner's need of this medication.  At the time of trial petitioner was also disabled by injuries from an automobile accident in 1998.  The injuries and associated pain appear to be chronic.  Petitioner's mental and physical health at the time of trial weigh in favor of granting relief.

## Conclusion

Upon examination of the factors, only knowledge or reason to know and the nonrequesting spouse's legal obligation weigh against granting relief.  When these two factors are balanced against the factors of petitioner's mental and physical health, her economic hardship, and the abuse she suffered, the factors weigh in favor of granting petitioner relief.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for petitioner.