T.C. Summary Opinion 2017-95


UNITED STATES TAX COURT


MINDY LESSARD, f.k.a. MINDY TOMKO, Petitioner, AND JOHN M. TOMKO, Intervenor v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 31667-15S.                    Filed December 27, 2017.


Mindy Lessard and John M. Tomko, pro sese.

William T. Maule, for respondent.


SUMMARY OPINION

GERBER, Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. The sole issue for our consideration is whether petitioner is entitled to relief from her 2013 joint and several tax liability under the provisions of section 6015.

Background

Petitioner resided in Florida at all pertinent times and at the time her petition was filed. Petitioner was married to John Tomko during 2013 and they were divorced on June 3, 2014. For their 2013 taxable year, petitioner and Mr. Tomko timely filed a joint Federal income tax return. Mr. Tomko earned less than petitioner because he had been in an auto accident and was unable to work for some part of the year. The Tomkos kept separate bank accounts, but each contributed (from his or her income) to the expenses of operating the household during 2013.

On April 27, 2015, respondent notified petitioner and Mr. Tomko of a $12,299 income tax deficiency and a $2,450 substantial understatement penalty. On July 20, 2015, respondent mailed a notice of deficiency to the Tomkos determining the above deficiency and understatement penalty. The income tax deficiency was attributable to their failure to report cancellation of debt income in the total amount of $19,741, which had been reported to respondent by three

sources, and $20,502 of withdrawals from Mr. Tomko's retirement plan. Neither of the Tomkos filed a petition seeking to show error with respect to respondent's determinations, and the deficiency and the understatement penalty were assessed against them.

On May 26, 2015, after respondent initially notified petitioner regarding the deficiency, she filed a Form 8857, Request for Innocent Spouse Relief, seeking relief from the liability under section 6015, which respondent denied on September 18, 2015. Among other things, petitioner explained that she relied on Mr. Tomko with respect to the income tax return. Petitioner was not aware that Mr. Tomko had not reported the amounts withdrawn from his "retirement savings plan" and cancellation of debt income at the time she signed the joint return. It was not until early 2014 when petitioner received the Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit Sharing Plans, IRAs, Insurance Contracts, etc., that she first became aware of the withdrawals from Mr. Tomko's retirement account. With respect to the forgiven indebtedness income, petitioner explained that she was not aware of the credit card accounts until she received the Forms 1099-C, Cancellation of Debt, at the end of 2013. At the time the 2013 joint return was being filed, petitioner was communicating with the credit card companies and contending that she had not opened those accounts or received

credit and, accordingly, that she did not owe interest or have cancellation of debt income. Petitioner sought relief from respondent's denial of her request by filing a timely petition with this Court.

The withdrawals from the retirement account and the cancellation of indebtedness income should have been, but were not, included in income on the Tomkos' 2013 joint Federal income tax return. With respect to the cancellation of indebtedness income, it was excluded from income for reasons of insolvency. In years prior to 2013, unbeknownst to petitioner, several credit card accounts were opened in her name. Over a period including 2013, a total of seven credit cards, with separate companies, were opened in petitioner's name, charges were accumulated, and the outstanding balances were not paid. Petitioner believed that the accounts were opened by Mr. Tomko. She became aware of those accounts only during early 2014 when she received the Forms 1099-C from the credit card companies. The credit card companies canceled the debts because the accounts became dormant because of failure to pay the outstanding balances. At some point, petitioner convinced five of the seven credit card companies that the accounts were not hers, but two persisted, resulting in the Forms 1099-C in her name for 2013. The total of the cancellation of indebtedness income was $19,741,

$14,936 of which was attributable to Mr. Tomko. The remaining $4,805 was attributable to petitioner.

The Tomkos were married for almost 20 years. During 2008 they declared bankruptcy and have experienced some financial difficulties since that time. Mr. Tomko underwithheld from his wages generating income tax underpayments in most years. At the time of their divorce, there were outstanding tax liabilities for years prior to 2013 of approximately $15,000. Of the almost $124,000 in wages reported for 2013, petitioner earned just short of $100,000. When the Tomkos were divorced, petitioner continued in her job.

On November 7, 2013, petitioner, at a bank and in the presence of a notary, signed a spousal waiver permitting Mr. Tomko to withdraw money from his retirement account at any time without her further consent. She was not aware of any withdrawals, however, until after the receipt of the Forms 1099-R at the beginning of 2014.

Mr. Tomko presented petitioner with their 2013 joint income tax return on the night of April 14, 2014, one day before the return was due. Petitioner generally looked it over and noted that it reflected a refund for the Tomkos' 2013 tax year. She did not specifically determine whether the retirement and cancellation of indebtedness income was included on the return. Petitioner signed

the 2013 joint return, prepared by Mr. Tomko as she had no specialized tax knowledge and she trusted him. Mr. Tomko had handled the tax returns and financial matters in earlier years because of his banking and finance background. Although petitioner was aware of the Forms 1099, she was not aware that those income items were not included in income on the 2013 joint income tax return. Petitioner did not become aware that those items were not reported on the 2013 joint return until 2015 when she received a notice of deficiency from respondent. Petitioner had successfully filed for relief from joint and several liability for the tax due on the 2008 through 2012 joint returns that she had filed with Mr. Tomko.

The general subject of the Tomkos' tax returns had been contentious since 2007. Mr. Tomko's payroll taxes were underwithheld, and he ultimately made arrangements with respondent to pay off any shortfall in tax. The shortfall in tax was due to Mr. Tomko. Petitioner's wages were subject to withholding, and her withholding paid the larger share of the tax liability for each year. In spite of these issues, petitioner believed that Mr. Tomko's experience as a banker qualified him to fill out the 2013 joint return. For all prior years the Tomkos had retained a professional tax preparer to prepare their returns. In the early years of their 20-year marriage, petitioner's mother was the professional return preparer.

The Tomkos were in an automobile accident during 2013, and Mr. Tomko was injured and required shoulder surgery. When they were in the process of divorce, Mr. Tomko received approximately $50,000 in connection with the accident and his injuries, and he gave $22,500 of that to petitioner.

## Discussion

Our review of petitioner's request for relief from the denial of her request for relief from joint and several liability is provided for in section 6015(e)(1)(A). We employ a de novo scope and standard of review, and petitioner bears the burden of showing that she is entitled to relief. See Rule 142(a); Porter v. Commissioner, 132 T.C. 203, 210 (2009). Generally, spouses filing a joint tax return are each fully responsible for the accuracy of their return and for the full tax liability. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). Section 6015, however, provides various means by which a spouse can be relieved of this joint and several obligation. Petitioner seeks relief from the Tomkos' 2013 joint and several Federal income tax liability under section 6015(b), (c) or (f). Mr. Tomko has intervened in this case and along with respondent contends that petitioner is not entitled to relief under any of the three subsections of section 6015.

A.  Relief Under Section 6015(b)

To qualify for relief from joint and several liability under section 6015(b)(1), a taxpayer must establish that:  (1) a joint return has been made for a taxable year; (2) on such return there is an understatement of tax attributable to erroneous items of taxpayer's spouse in filing the joint return; (3) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such an understatement; (4) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for the taxable year attributable to that understatement; and (5) the taxpayer elects (in such form as the Secretary may prescribe) the benefits of subsection (b) not later than the date which is two years after the date the Secretary has begun collection activities with respect to the individual making the election.

The requirements of section 6015(b)(1) are stated in the conjunctive.  A failure to meet any one of the requirements will prevent a spouse from qualifying for relief.  Respondent contends that petitioner failed to establish that she did not know and had no reason to know of the understatement and/or that it would be inequitable to hold her liable for the understatement.

As to whether petitioner knew or had reason to know of the understatement, by her execution of a spousal waiver permitting Mr. Tomko to withdraw funds from his retirement accounts in November of 2013 she was made aware of that potential. Subsequently, petitioner received and was aware of the Forms 1099-R before the time the 2013 joint income tax return was prepared and filed. Petitioner admitted that she looked over the return before filing although she relied on Mr. Tomko's expertise in preparing it. Her signing the return without properly reviewing it does not excuse her from "knowing or having reason to know" of the misstatement on the return. See Olson v. Commissioner, T.C. Memo. 2009-294; see also sec. 1.6015-2(c), Income Tax Regs.

Whether it is inequitable to hold a spouse liable for a deficiency is determined by "taking into account all the facts and circumstances". Sec. 6015(b)(1)(D). The most often cited material factors to be considered are: (1) whether there has been a significant benefit to the spouse claiming relief and (2) whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse. Jonson v. Commissioner, 118 T.C. 106, 119 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003).

The record in this case does not reveal any concealment, overreaching, or other wrongdoing on the part of Mr. Tomko. Petitioner and Mr. Tomko lived together throughout 2013 and did not become divorced until June of 2014. Until that time they shared household expenses and each contributed some income to pay those expenses. During 2013 Mr. Tomko made less in wages than petitioner because he had been injured in the auto accident. Mr. Tomko used the withdrawals from his retirement account for usual living expenses, and petitioner benefited from those expenditures. We accordingly hold that under section 6015(b)(1)(D) it is not inequitable to hold petitioner liable for the deficiency in tax for the 2013 year.

B. Relief Under Section 6015(c)

In general, section 6015(c) allows proportionate tax relief (if a timely election is made) through allocation of the deficiency between individuals who filed a joint return and are no longer married, are legally separated, or have not resided together for a 12-month period. Such an allocation is not permitted, however, if the Secretary demonstrates that the individual electing relief had actual knowledge, at the time the return was signed, of any item giving rise to a deficiency (or portion thereof) which is not allocable to that individual. Sec. 6015(c)(3)(C). For purposes of section 6015(c), unlike for purposes of section

6015(b) and (f), equitable considerations in holding the putative innocent spouse liable for unpaid tax or any deficiency are of no import. The burden of proof to establish the portion of the deficiency allocated to the requesting spouse is on the requesting spouse. Sec. 6015(c)(2).

In the instant case no party disputes that the principal items giving rise to the deficiency are the $19,741 of cancellation of debt income and the $20,502 of retirement income issued to Mr. Tomko. Nor is there any dispute that petitioner is entitled to make an election under section 6015(c) as she and Mr. Tomko were no longer married when petitioner filed her petition in this Court. The dispute between the parties involves whether petitioner had actual knowledge, at the time the joint return was signed, of "any item giving rise to the deficiency (or portion thereof)".

Generally, the deficiency is allocated between the joint filers as if they had filed separate returns. Sec. 6015(c)(3). No relief is granted, however, where the requesting spouse had "actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual." Sec. 6015(c)(3)(C).

The knowledge requirement of section 6015(c)(3)(C) does not require the electing spouse to know the tax consequences arising from the item giving rise to

the deficiency or that the item reported on the return is incorrect. Rather, the statute mandates only a showing that the electing spouse actually knew of the item on the return that gave rise to the deficiency (or portion thereof). Cheshire v. Commissioner, 115 T.C. 183, 194-195 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002).

When petitioner signed the 2013 joint return, she was aware of the amounts, the sources, and the date of receipt of the retirement distributions, and she was also aware of the cancellation of debt income attributable to herself and Mr. Tomko. She became aware because of her receipt of the Forms 1099-C and 1099-R. Although petitioner denies that she knew that Mr. Tomko was going to withdraw retirement income at the time that she signed the spousal waiver, she was aware of the Forms 1099-R reflecting a total of $20,502 of retirement income withdrawn during 2013 when she signed the 2013 joint return. As stated above, her failure to fully understand the tax consequences of those items does not provide a basis for relief. We accordingly hold that petitioner is not entitled to relief from joint tax liability under section 6015(c).

## C. Relief Under Section 6015(f)

Section 6015(f) confers discretion on the Secretary to grant innocent spouse relief to an individual (where relief is not available under section 6015(b) or (c)) if, taking into account all the facts and circumstances, it is inequitable to hold the

individual liable for any unpaid tax or deficiency (or any portion of either). Petitioner sought but was denied relief under section 6015(f). She contends that respondent's refusal to grant relief to her was arbitrary, capricious, and without sound basis in fact.

We apply a de novo standard of review as well as a de novo scope of review. See Porter v. Commissioner, 132 T.C. 203 (2009) (de novo standard); Porter v. Commissioner, 130 T.C. 115 (2008) (de novo scope). Petitioner bears the burden of proving that she is entitled to equitable relief under section 6015(f). See Rule 142(a). The Commissioner analyzes requests for section 6015(f) relief using the procedures set forth in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296.

The Commissioner generally will not grant relief unless the taxpayer meets seven threshold conditions. Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399. Respondent concedes that petitioner meets these conditions with respect to the portion of the cancellation of debt income attributable to Mr. Tomko. If a taxpayer meets the threshold conditions, the Commissioner then considers several factors to determine whether a requesting spouse is entitled to relief under section 6015(f). Id. sec. 4.03, 2013-43 I.R.B. at 400. We consider all relevant facts and

circumstances in determining whether the taxpayer is entitled to relief. Sec.
6015(e) and (f)(1). The following factors are relevant to our inquiry.

The seven threshold conditions are: (1) the requesting spouse filed a joint
return for the taxable year for which he or she seeks relief; (2) relief is not
available to the requesting spouse under section 6015(b) or (c); (3) the claim for
relief is timely filed; (4) no assets were transferred between the spouses as part of
a fraudulent scheme by the spouses; (5) the nonrequesting spouse did not transfer
disqualified assets to the requesting spouse; (6) the requesting spouse did not
knowingly participate in the filing of a fraudulent joint return; and (7) absent
enumerated exceptions, the income tax liability from which the requesting spouse
seeks relief is attributable to an item of the nonrequesting spouse's income. See
Rev. Proc. 2013-34, sec. 4.01.

The two categories of adjustments giving rise to the 2013 income tax
deficiency are the retirement account withdrawals and the cancellation of debt
income. Respondent argues that petitioner's unreported $4,805 cancellation of
debt income precludes her meeting the seventh threshold condition. We agree
with respondent and, accordingly, the portion of the deficiency attributable to the
$4,805 cancellation of debt income is not qualified for relief under section
6015(f).

Petitioner meets the threshold conditions with respect to the $14,936 of cancellation of debt income attributable to Mr. Tomko and the $20,502 in withdrawals from Mr. Tomko's retirement account. Where the requesting spouse satisfies the threshold conditions of Rev. Proc. 2013-34, sec. 4.01, the IRS may grant relief under the facts-and-circumstances test of Rev. Proc. 2013-34, sec. 4.03. Under that test the IRS considers the following nonexclusive list of factors in section 4.03(2) to determine whether taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable: (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse would suffer economic hardship if not granted relief; (3) whether the requesting spouse knew or had reason to know that the other spouse would not pay the liability; (4) whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement; (5) whether the requesting spouse received a significant benefit from the item giving rise to the deficiency; (6) whether the requesting spouse has made a good faith effort to comply with the tax laws for the taxable years following the taxable year to which the request for such relief relates; and (7) whether the requesting spouse was in poor mental or physical health at the time he or she signed the tax return or at the time he or she requested relief. In

addition, the IRS considers "abuse or the existence of financial control by the nonrequesting spouse * * * [as] a factor that may impact the other factors" listed above. See id.

Respondent argues with respect to Mr. Tomko's cancellation of debt income and retirement withdrawals that petitioner has "failed to establish that she was not aware of the * * * [items giving] rise to the liability and that she would suffer economic hardship if the relief is not granted." Petitioner disagrees categorically and contends she should not owe taxes on "money * * * [she] had no knowledge of and did not benefit from."

The circumstances of this case appear appropriate for application of the factors considered by respondent in evaluating petitioner's claim for equitable relief. Accordingly, we address the factors listed in Rev. Proc. 2013-34, sec. 4.03(2).

1. Marital Status

Petitioner was divorced and living apart from Mr. Tomko when she filed her request for "innocent spouse" relief. This factor weighs in favor of granting relief.

2. Economic Hardship

In general, economic hardship exists where payment of the tax liability would cause the taxpayer to be unable to pay reasonable basic living expenses.

Butner v. Commissioner, T.C. Memo. 2007-136. Petitioner has shown that there was outstanding debt at the time of her divorce from Mr. Tomko, but there has been no showing of economic hardship. At the time of the divorce and thereafter, petitioner continued in her job in which she made upwards of $100,000 annually. Accordingly, this factor does not weigh in favor of granting relief.

    3. Knowledge or Reason To Know

An important factor is whether petitioner had actual knowledge of the disputed items of income (the retirement withdrawals and the cancellation of debt income), as well as the amounts thereof, that gave rise to the deficiency, at the time she signed the joint 2013 return. The fact that petitioner did not understand the tax return and/or that these amounts were either misstated or not reported on the return is of no import. As explained in our discussion of section 6015(b) relief, petitioner's signing of the return without properly reviewing it does not excuse her from "knowing or having reason to know" of the misstatement on the return. See Olson v. Commissioner, T.C. Memo. 2009-294. Consequently, this factor does not weigh in favor of granting relief. See Beatty v. Commissioner, T.C. Memo. 2007-167.

4. Nonrequesting Spouse's Legal Obligation

Where a divorce decree or other court order gives the nonrequesting spouse a legal obligation to pay the liability, this fact can weigh in favor of granting relief to the requesting spouse. No divorce decree or separation order imposes such a liability on Mr. Tomko, and this factor therefore does not weigh in favor of granting relief.

5. Significant Benefit

Here there is no evidence that the proceeds of Mr. Tomko's canceled debt were received or used in 2013, so as to that item this factor is neutral. As to the retirement withdrawals, they were made during the period under consideration. Petitioner and Mr. Tomko both financially contributed to the payment of the household expenses during 2013 and before their divorce in June 2014. There is, however, no indication of a "significant benefit" (beyond normal support) from the unpaid income tax liability or items giving rise to the liability. Therefore, this factor weighs moderately in favor of relief. See Magee v. Commissioner, T.C. Memo. 2005-263.

6. Compliance With Federal Tax Laws

Respondent agrees that petitioner is in compliance with Federal income tax laws for the taxable years following the taxable year to which the request for relief relates. Accordingly, this factor weighs in favor of relief.

7. Mental or Physical Health

There is no evidence of mental or physical health problems, and therefore this factor is neutral.

There is no evidence of abuse or exercise of financial control by Mr. Tomko that would affect the other factors. Accordingly, we find that a review of these factors does not favor petitioner. Moreover, the circumstances of this case are not compelling in terms of the need for equitable relief for petitioner. Petitioner should have known of the understatement reflected on the return, and she is not facing any economic hardship or other mental, physical, or abuse problems.

Considering the facts and circumstances in the record, we hold that petitioner is not entitled to "innocent spouse" relief under section 6015(f), and respondent's determination is sustained.

To reflect the foregoing,

Decision will be entered for respondent.